**McCREARY TIRE & RUBBER COMPANY**

v.

**CEAT S.p.A., Appellant,**

v.

**MELLON BANK, N.A., Garnishee.**

**No. 73-2020.**

United States Court of Appeals, Third Circuit.

Argued June 10, 1974.

Decided July 8, 1974.

Charles Weiss, Frank J. Clements, Thorp, Reed & Armstrong, Pittsburgh, Pa., for appellee.

Clayton A. Sweeney, Stephen A. George, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., for appellant.

Before STALEY, GIBBONS and WEIS, Circuit Judges.

OPINION OF THE COURT.

GIBBONS, Circuit Judge.

This is an appeal in a diversity case from an order which (1) denied defendant's motion to dissolve a foreign attachment, (2) denied defendant's motion to dismiss the complaint, (3) denied defendant's motion to transfer to another venue, and (4) denied defendant's motion to stay the case pending arbitration. The case commenced with the filing of a Praecipe and Complaint in Foreign Attachment in the Court of Common Pleas of Allegheny County. The plaintiff, McCreary Tire & Rubber Company (McCreary), a Pennsylvania corporation, sued CEAT, S.p.A. (CEAT), an Italian corporation, for alleged breaches of a distributorship contract and Mellon Bank, N.A. (Mellon), garnishee. CEAT filed a petition for removal to the United States District Court for the Western District of Pennsylvania. CEAT then made three alternative motions. It moved to dissolve the foreign attachment on the ground that at the time of service of the writ Mellon had none of its property in Mellon's custody; it moved to dismiss the complaint; and it moved for an order transferring the case to the United States District Court for the District of Massachusetts, where a prior action by McCreary against CEAT is pending, and in which CEAT has made a general appearance. It also moved for a stay of the within action so as to permit arbitration of the dispute in accordance with the terms of the contract upon which McCreary sued. The court denied each motion, denied a motion for a certification pursuant to 28 U.S.C. § 1292(b) and denied a motion for reconsideration. This appeal followed.

It is undisputed that a suit by McCreary against CEAT on essentially the same claims is pending in the United States District Court for the District of Massachusetts, that in the Massachusetts case CEAT has made a general appearance, that the Massachusetts district court ordered arbitration in accordance with the contract and stayed the suit

pending arbitration and that the order compelling arbitration has been affirmed by the Court of Appeals for the First Circuit, McCreary Tire & Rubber Co. v. CEAT, S.p.A., No. 73–1138 (1st Cir. July 11, 1973).[1] At oral argument we were advised by counsel for McCreary and CEAT that the arbitration proceeding had actually commenced.

## I. APPEALABILITY

In this court McCreary moved to dismiss the appeal. Another panel on March 13, 1974 referred that motion to the panel which would hear the appeal on the merits. At the outset, therefore, we dispose of the motion to dismiss the appeal. The order appealed from, while embodied in a single document, embraces four separate subject matters which must be treated separately.

### A. *The Motion to Dissolve a Prejudgment Foreign Attachment*

■ Paragraph one of the order provides "Defendant's Motion to Dissolve Foreign Attachment be and hereby is denied." The foreign attachment was made pursuant to Rules 1255 and 1258 of the Pennsylvania Rules of Civil Procedure 12 P.S. Appendix. In United States v. Estate of Pearce, 498 F.2d 847 (3d Cir. 1974), the court en banc held unanimously that an order denying a motion to vacate a sequestration pursuant to 10 Del.C. § 366 was an interlocutory order unappealable under 28 U.S.C. § 1291, and the other eight active judges declined my invitation to treat such an order as the functional equivalent of an injunction or appointment of a receiver appealable under 28 U.S.C. § 1292(a). There is no basis for distinguishing Delaware foreign sequestration and Pennsylvania foreign attachment. Paragraph one is interlocutory and unappealable.

### B. *The Motion to Dismiss the Action*

■ It is settled that denial of a motion to dismiss is unappealable. *E. g.,* Fleming v. Bernardi, 441 F.2d 732 (3d Cir. 1973) (per curiam); Commonwealth of Pennsylvania v. Brown, 373 F.2d 771, 776 (3d Cir. 1967); *see* Catlin v. United States, 324 U.S. 229, 236, 65 S.Ct. 631, 89 L.Ed. 911 (1945).

### C. *The Transfer Motion*

■ An order transferring an action pursuant to 28 U.S.C. § 1404(a) or refusing to make such a transfer is interlocutory and unappealable under § 1291. All States Freight v. Modarelli, 196 F.2d 1010, 1011(3d Cir. 1952). Limited review may be available by way of mandamus to review a transfer motion which the district court could not properly have made, Solomon v. Continental American Life Insurance Co., 472 F.2d 1043, 1045–1046 (3d Cir. 1973), and a discretionary appeal pursuant to § 1292(b) may be available, *see* Katz v. Carte Blanche Corp., 496 F.2d 747, at 752–756 (3d Cir. 1974). But appellant does not contend that its appeal should be treated as a petition for mandamus, and § 1292(b) certification was denied by the district court.

### D. *The Motion for a Stay Pending Arbitration*

■ The order denying a stay pending arbitration is not a final order appealable under § 1291. But McCreary's complaint seeks recovery of money damages and no other relief. Since this suit would, prior to the merger of law and equity, have been an action at law, the motion for a stay pending arbitration is treated as a motion for an injunction against continuing the action at law. It is appealable pursuant to § 1292(a)(1) as an order denying an

---

1. The First Circuit held that the portion of the district court's order staying the action was unappealable. That holding overlooked the *Enelow-Ettelson* rule, discussed *infra,* which the First Circuit correctly applied to find appealability in Warren Brothers Co. v. Cardi, 471 F.2d 1304, 1306 (1st Cir. 1973) and to find unappealability in New England Power Co. v. Asiatic Petroleum Corp., 456 F.2d 183, 185–186 (1st Cir. 1972).

injunction. Ettelson v. Metropolitan Life Insurance Co., 317 U.S. 188, 63 S. Ct. 163, 87 L.Ed. 176 (1942); Enelow v. New York Life Insurance Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935); Kirschner v. West Co., 300 F.2d 133, 134 (3d Cir. 1962). *Compare* Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955), *with* Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Commission, 387 F.2d 768 (3d Cir. 1967). Thus we have appellate jurisdiction to consider whether the action should have been stayed pending arbitration.

## II. THE MERITS OF THE ORDER DENYING A STAY

Attached to McCreary's complaint as Exhibit A is a copy of a contract dated November 16, 1970 whereby CEAT appointed McCreary its exclusive distributor in the United States of pneumatic tires and tubes manufactured by CEAT in Italy bearing the CEAT label or having the same tread design as tires bearing that label. Section 3 of the contract also provides, in relevant part:

"(b) During the period this agreement is in effect, CEAT shall not appoint any other distributor or any other agent for the sale of Products in the Territory, and CEAT shall not itself otherwise sell or distribute the Products directly or indirectly in the Territory. . . .

. . . . . . .

(i) CEAT warrants that all Products delivered by it to or for the account of the Distributor shall be free from defects in material or workmanship (which phrase as used in this Agreement shall include ply and tread separation resulting from any such defects, and substantial visual defects) and shall conform to all safety and other standards established by the United States Department of Transportation or any other Federal governmental agency having jurisdiction over the Products."

Count I of the complaint alleges that CEAT has breached the exclusivity clause quoted above by selling to Duddy's Inc., a Massachusetts corporation, radial tires bearing a different trade name but having the same tread design. This count seeks $2,000,000 in damages. Counts III and IV allege breaches of the express warranty quoted above, and of an implied warranty of merchantable quality. Each of these counts seeks $250,000 in damages. The allegations of Counts I, III and IV relate to disputes which quite plainly fall within the arbitration clause in section 7(b) of the agreement:

"This agreement shall be governed by the laws of the Republic of Italy. Any controversy arising out of or in connection with this agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce, by three arbitrators appointed in accordance with said Rules. The arbitration shall be held in Brussels, Belgium, and shall be conducted in English. Judgment upon the award rendered may be entered in any court having jurisdiction for a judicial acceptance of the award and an order of enforcement, as the case may be.

Count II of the complaint realleges the existence of the November 16, 1970 exclusive distributorship contract, Exhibit A. It then refers to Exhibit B, a letter dated November 5, 1970 from CEAT to McCreary, which provides:

"As you know, CEAT tires are manufactured in India by a corporation partly owned by us. We will give that Indian corporation a copy of the proposed Distributor Agreement under which you are made the exclusive distributor in the United States for CEAT passenger car and truck tires. We will use our best efforts to obtain the agreement of the Indian corporation that if it should ever export passenger car or truck tires to the United States, it will appoint you the exclusive distributor for such tires on the same terms and conditions (other than minimum quantities) as the terms and conditions specified in the Distributor

Agreement between us. If you do not receive the agreement of the Indian corporation specified above, and if thereafter, at a time that the Distributor Agreement between us is in force, it seeks to sell tires (other than in a nominal or negligible amount) intended to be delivered or sold in the United States, we agree that we will use our best efforts to prevent the importation into the United States or sale there under the trademark CEAT owned by us.

We represent that except in India, CEAT tires are not made outside of our plants in Italy. We agree that if at any time we manufacture CEAT tires outside of Italy or we grant the right to any company, whether or not controlled by us, to manufacture CEAT tires, we will require that you be designated exclusive distributor in the United States on the same terms (except for minimum quantities) as those in the Distributor Agreement between us."

Count II alleges, further, that since October 1972 CEAT brand tires manufactured by CEAT Tyres of India, Ltd. (CEAT-India) have been imported into the United States and sold in the states of California and Arizona, and that on information and belief CEAT has failed to use its best efforts to have CEAT-India appoint McCreary as its exclusive distributor for CEAT brand tires in the United States nor has it used its best efforts to prevent CEAT brand tires manufactured by CEAT-India from being imported and sold in the United States. Count II seeks $250,000 in damages. A fair reading of the count is that the damages alleged arise out of the existence of the distributorship agreement. Thus prima facie Count II as well as Counts I, III and IV would seem to involve a "controversy arising out of or in connection with" that agreement and to be covered by the arbitration clause. In its motion for a stay pending arbitration CEAT so alleged, and further alleged:

"The arbitration agreement between plaintiff and defendants must be enforced pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958."

The district court was also informed of the undisputed fact that McCreary had started a suit in October 1972 in the United States District Court for the District of Massachusetts by attempting to attach debts owed CEAT. In that suit, which joined Duddy's, Inc. as a defendant, McCreary alleged the same breaches as are alleged in Counts I and II. CEAT appeared in the Massachusetts action and its motions for a stay and an order compelling arbitration of the alleged breach of the exclusive distributorship were granted. Thus when the stay was denied in this action arbitration had already been ordered, and is now underway.

■ McCreary urges that the denial of the stay pending arbitration should be affirmed since the district court acted within the bounds of a permissible discretion. *See* Landis v. North American Co., 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936); Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Commission, *supra*, 387 F.2d at 773. But this is not a case in which a stay pending arbitration was discretionary.

The district court was bound by the terms of the Convention on Recognition and Enforcement of Foreign Arbitral Awards, [1970] 3 U.S.T. 2517, T.I.A.S. No. 6997 (reprinted following 9 U.S.C.A. § 201 (1974 Supp.)). That treaty was ratified by Italy on January 31, 1969 and by the United States on September 30, 1970. Congress passed implementing legislation on July 31, 1970. Pub.L. No. 91–368, 84 Stat. 692 (codified at 9 U.S. C. §§ 201–208). That statute provides in part:

"An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title [§ 2 of the federal Arbitra-

tion Act of 1925, 9 U.S.C. § 2], falls under the Convention." 9 U.S.C. § 202.

The same statute provides that an action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States and that the district courts of the United States shall have original jurisdiction over such proceedings without regard to amount in controversy. 9 U. S.C. § 203. Although this case was removed on diversity grounds it was also removable on the authority of 9 U.S.C. § 205, which provides for such removal. Moreover 9 U.S.C. § 206 makes clear that the federal court may order arbitration of a dispute to which the Convention applies at the place agreed upon by the parties, within or without the United States. *See also* Agreement Supplementing the Treaty of Friendship, Commerce and Navigation, United States and Italy, article VI, [1961] 1 U.S.T. 131, 136, T.I.A.S. No. 4685. *Compare with* 9 U.S.C. § 4.

Article II of the Convention provides:

"1. Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

2. The term 'agreement in writing' shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams.

3. The court of a Contracting State, when seized of an action in a matter in respect of which the parties

have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed."

There is nothing discretionary about article II(3) of the Convention. It states that district courts *shall* at the request of a party to an arbitration agreement refer the parties to arbitration. The enactment of Pub.L. 91-368, providing a federal remedy for the enforcement of the Convention, including removal jurisdiction without regard to diversity or amount in controversy, demonstrates the firm commitment of the Congress to the elimination of vestiges of judicial reluctance to enforce arbitration agreements, at least in the international commercial context. *See* Scherk v. Alberto-Culver Co., 417 U.S. 506, n. 15, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). It was error to deny the motion for a stay in disregard of the convention.

Since we hold the treaty controls, it is unnecessary to decide whether in any event, since the complaint shows on its face that it involves a "transaction involving [foreign] commerce," 9 U.S.C. § 2, the mandatory language of § 3 of the federal Arbitration Act of 1925 compels the same result.[2] *Cf.* Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Commission, *supra*, 387 F.2d at 772.

## III. THE CONTINUANCE OF THE ATTACHMENT

■ We pointed out above that an order refusing to vacate an attachment is interlocutory and unappealable. That order is before us, however, since it is incorporated in the same order denying the stay. Ordinarily an interlocutory

---

2. "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall

on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S. C. § 3.

appeal pursuant to § 1292(a)(1) brings before us only that part of the judgment having to do with injunctive relief. Caterpillar Tractor Co. v. International Harvester Co., 120 F.2d 82, 86 (3d Cir. 1941). It has been urged, however, that this is only a rule of orderly judicial administration. "Once a timely appeal is taken from an order made appealable by statute, the power of a court of appeals should be plenary to the extent that it chooses to exercise it. A court should not close its eyes to what is plainly there." 9 Moore's Federal Practice ¶ 110.25 [1], at 273 (2d ed. 1973). *See* Hurwitz v. Directors Guild of America, Inc., 364 F.2d 67 (2d Cir.), cert. denied, 385 U.S. 971, 87 S.Ct. 508, 17 L.Ed.2d 435 (1966); *cf.* Johnson v. Alldredge, 488 F.2d 820 (3d Cir. 1973). What is plainly there to see is that resort to a Praecipe and Complaint in Foreign Attachment in the Court of Common Pleas of Pennsylvania is a violation of McCreary's agreement to submit the underlying disputes to arbitration, and that the Convention obliges the district court to recognize and enforce the agreement to arbitrate. Quite possibly foreign attachment may be available for the enforcement of an arbitration award.[3] This complaint does not seek to enforce an arbitration award by foreign attachment. It seeks to bypass the agreed upon method of settling disputes. Such a bypass is prohibited by the Convention if one party to the agreement objects. Unlike § 3 of the federal Act, article II(3) of the Convention provides that the court of a contracting state shall "refer the parties to arbitration" rather than "stay the trial of the action." The Convention forbids the courts of a contracting state from entertaining a suit which violates an agreement to arbitrate. Thus the contention that arbitration is merely another method of trial, to which state provisional remedies should equally apply, is unavailable. That contention, accepted by Judge Learned Hand as a justification for prearbitration attachment in Murray Oil Products Co. v. Mutsui & Co., 146 F.2d 381, 384 (2d Cir. 1944), was rejected, in a diversity context, by the Supreme Court in Bernhardt v. Polygraphic Company of America, Inc., 350 U.S. 198, 202, 76 S.Ct. 273, 100 L.Ed. 199 (1956). Here, although the suit is in the federal court after removal from a state court, the governing law with respect to arbitration is the Convention. In the district court CEAT, after referring to the Treaty, alleged:

"4. Contrary to the terms of both the Distributor Agreement and of the Convention, no arbitration has been had of the claims asserted by plaintiff in this action against defendant, and defendant is not aware of any demands by plaintiff for such arbitration."

CEAT then asked for an order releasing all property from the foreign attachment and permitting arbitration. The obvious purpose of the enactment of Pub. L. 91–368, permitting removal of all cases falling within the terms of the treaty, was to prevent the vagaries of state law from impeding its full implementation. Permitting a continued resort to foreign attachment in breach of the agreement is inconsistent with that purpose. The relief requested, a release of all property from the attachment, should have been granted.

Since we conclude that the Convention requires discharge of the foreign attachment, we have no occasion to pass upon CEAT's attack on the constitutionality of the Pennsylvania foreign attachment procedures.

The order of the district court will be reversed and the case remanded for the entry of an order (1) discharging the foreign attachment and (2) referring the disputed claims to arbitration pursuant to Article 7(b) of Exhibit A attached to the complaint.

---

3. Article III of the Convention provides:
   "Each Contracting State shall recognize arbitral awards as binding and enforce them in accordance with rules and procedure of the territory where the award is relied upon, under the conditions laid down in the following articles. . . . ."