Frank J. NASCONE, and Spudnuts of
Pennsylvania, Inc., a corporation,
Appellants,

v.

SPUDNUTS, INC., a corporation, and
Frank Boyd, Appellees.

No. 83–5602.

United States Court of Appeals,
Third Circuit.

Argued March 9, 1984.

Decided June 1, 1984.

As Amended June 26, 1984.

Stanley Yorsz (argued), Thomas M.
Thompson, Buchanan & Ingersoll, Pittsburgh, Pa., for appellants.

P. Christian Hague (argued), Jonathan D.
Bonime, Meyer, Unkovic & Scott, Pittsburgh, Pa., for appellees.

Before HUNTER and BECKER, Circuit Judges, and KATZ, District Judge.*

## OPINION OF THE COURT

BECKER, Circuit Judge.

Frank Nascone, a Pittsburgh-based franchisee of Spudnuts,.a Utah-based fast food franchisor, appeals from an order of the district court for the Western District of Pennsylvania transferring this diversity and antitrust action to the District of Utah because of a forum selection clause in a franchise agreement that the court found to be applicable to the case and reasonable in scope and content. Nascone advances a number of arguments that the district court erred on the merits in issuing the transfer order. The critical issue on this appeal, however, is whether we have jurisdiction at this point to review the district court's order.

For many years this court—and virtually every other court—has held that such orders transferring venue are not appealable. *See Mutual Life Insurance Co. v. Ginsburg,* 228 F.2d 881 (3d Cir.1956), *cert. denied,* 351 U.S. 979, 76 S.Ct. 1050, 100 L.Ed. 1495 (1956); C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* §§ 3846, 3855 (1976). In *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.,* 709 F.2d 190 (3d Cir.1983), however, a divided panel held that a district court's order affirming a bankruptcy court's order denying a motion seeking dismissal on grounds that a forum selection clause required that the dispute be litigated in England, was appealable. The sweep of *Coastal Steel* is a matter of serious dispute between the parties. Appellee Spudnuts would distinguish the case and, inferentially, limit it to its facts, i.e., an outright dismissal leading, in effect, to a transfer of the action to the court system of a foreign nation. Nascone, on the other hand, asserts that, whatever its factual differences with this case, *Coastal Steel* is analytically indistinguishable and controlling.

Under these circumstances, we have scrutinized *Coastal Steel* so as to discern any material distinguishing features. We believe that *Coastal Steel* is distinguishable in that the plaintiff in that action requested only legal relief whereas the plaintiff here sought significant equitable relief. For the reasons set forth below, we believe this fact precludes use of the Enelow-Ettelson doctrine as a means for our attaining jurisdiction over the district court's transfer order on grounds that it amounted to an injunction. We also believe that, where the district court is essentially ruling on a motion to transfer venue within the federal system, be it "in the interests of justice" or because of a forum selection clause in a contract underlying the dispute, the order issued by the district court is not a collaterally final order. Accordingly, we hold that the order of the district court is not appealable.

Because of the importance of the appealability issue to the jurisprudence of this circuit, we shall explicate its ramifications at some length. First, we shall briefly chronicle the factual and procedural history of this case. Second, we shall outline the pre-*Coastal* jurisprudence on appealability in this circuit and elsewhere. Third, we shall examine *Coastal,* bifurcating our discussion to accommodate the alternative holdings on which the decision in that case rested, and expounding at some length on the Enelow-Ettelson doctrine. Finding that *Coastal* is materially distinguishable and that the order issued by the district court is accordingly unappealable, in part IV we shall treat the appeal as a petition for mandamus; *see Gold v. Johns-Manville Sales Corp.,* 723 F.2d 1068, 1074 (3d Cir. 1983); *Cheyney State College Faculty v. Hufstedler,* 703 F.2d 732, 736 (3d Cir.1983), and explore its merit, or, more accurately, its lack thereof. Accordingly, relief will be denied.

I.

Spudnuts is a Utah corporation that franchises retail outlets for sale of its potato-

---

* Honorable Marvin Katz, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

based muffins, donuts, and other baked goods. In June of 1981, and following negotiations between the parties, Nascone entered into an Area Franchise Agreement with Spudnuts that granted Nascone the exclusive right to subfranchise stores in Western Pennsylvania. The Area Franchise Agreement also obligated Nascone to establish two Spudnuts retail outlets within this exclusive territory during the following year. The Area Franchise Agreement contains a choice of law clause stating that all questions arising out of the agreement are to be governed by Utah law. The Area Franchise Agreement does not contain any explicit provision, however, calling for resolution of disputes in courts situated in Utah.

Later that month, the parties entered into another agreement under which Nascone was to operate a Spudnuts outlet on McKnight Road in Pittsburgh. This agreement, known as the McKnight Agreement, contained a forum selection clause stating: "This franchise shall be construed according to the laws of the State of Utah, and venue for any proceeding relating to the provisions hereof shall be Salt Lake County, State of Utah."

In 1982, Nascone brought a four-count suit against Spudnuts. Count I of the complaint pled fraud and demanded rescission of the two agreements, restitution of a $75,000 deposit paid under the agreement, and payment of related costs. Count II pled a violation Federal Trade Commission franchising regulations and demanded similar relief. Count III pled breach of contract and demanded damages. Count IV claimed that Spudnuts' conduct violated the antitrust laws and demanded treble damages.

Spudnuts filed a motion (styled a "Motion to Dismiss") asking that the case against it be dismissed or, in the alternative, for transfer of the case to the District of Utah. The district court granted the transfer request. The court found as a fact that all counts of the complaint arose out of both the Area Franchise Agreement

and the McKnight Agreement and that Nascone would not be put at "an unreasonable disadvantage by enforcement of the forum selection clause." As a matter of law, the district court concluded that "enforcement of the forum selection clause in this case would not be unreasonable."

## II.

Prior to *Coastal Steel*, the law on appealability of transfer orders was relatively well settled. If a defendant won a motion to transfer a case out of the circuit, the plaintiff could ask the transferor district court, under the appropriate circumstances, to certify the issue to the "transferor appellate court" (i.e., the appellate court serving the transferor district court) under 28 U.S.C. § 1292(b).[1] *See Armor Elevator Co., Inc. v. Phoenix Urban Corp.*, 493 F.Supp. 876, 890 (D.Mass.1980); *see also McCreary Tire & Rubber Co. v. CEAT*, 501 F.2d 1032 (3d Cir.1974) (dictum); *Katz v. Carte Blanche Corp.*, 496 F.2d 747 (3d Cir.) (dictum), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974). Alternatively, the plaintiff could petition the transferor appellate court for a writ of mandamus blocking the transfer. *See Solomon v. Continental American Life Insurance Co.*, 472 F.2d 1043 (3d Cir.1973); *see also Van Dusen v. Barrack*, 376 U.S. 612, 615 n. 3, 84 S.Ct. 805, 809 n. 3, 11 L.Ed.2d 945 (1964). If these devices failed, the plaintiff could, under certain conditions, move in the transferee district court for re-transfer back to the original transferor court; the transferor court's disposition of the original motion to transfer would not necessarily be res judicata. *Compare Hoffman v. Blaski*, 363 U.S. 335, 340 n. 9, 80 S.Ct. 1084, 1088 n. 9, 4 L.Ed.2d 1254 (1960) (transfer in the interests of justice did not preclude transferee court from determining whether it had jurisdiction and venue), *with Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162 (3d Cir.1982) (distinguishing *Blaski* and barring reconsideration of jurisdiction and venue issues by transferee dis-

---

1. We assume throughout the discussion that all    transfer motions are made by defendants.

trict court where transferor courts had already decided issue in transferring case under 28 U.S.C. § 1406). If the transferee district court denied the motion to re-transfer, the plaintiff could petition the "transferee appellate court" (i.e., the appellate court serving the transferee district court) for a writ of mandamus. *Id.* And, if mandamus failed, and if the plaintiff ultimately could appeal from an adverse final judgment in the case, we believe the plaintiff could then raise the failure of the district court to re-transfer as grounds for reversal. *See infra* part III.B.

If the defendant lost the motion to transfer a case out of the circuit, the course of appellate proceedings was somewhat simpler. The defendant could ask the district court to certify the question to the court of appeals under 28 U.S.C. § 1292(b). *See Friends for All Children v. Lockheed Aircraft Corporation,* 717 F.2d 602 (D.C.Cir. 1983); *McCreary,* 501 F.2d 1032; *Katz,* 496 F.2d 747. Alternatively, the defendant whose motion to transfer or dismiss for forum non conveniens had been denied could petition the potential transferor appellate court for a writ of mandamus. *See Paramount Pictures v. Rodney,* 186 F.2d 111 (3d Cir.), *cert. denied,* 340 U.S. 953, 71 S.Ct. 572, 95 L.Ed. 687 (1951). It was quite clear, however, that absent certification from the district court under section 1292(b) and absent a petition for a writ of mandamus (or the equivalent of such a petition), the transferor appellate court could not review denials of motions for transfer or denial of motions to dismiss for forum non conveniens. *See Compagnie Des Bauxites De Guinea v. Insurance Company of North America,* 651 F.2d 877, 888 (3d Cir.1981) (denial of forum non conveniens motion not appealable under 28 U.S.C. § 1291 or 28 U.S.C. § 1292); *Wallace v. Norman Industries, Inc.,* 467 F.2d 824 (5th Cir.1972); *Kasey v. Molybdenum Corp. of America,* 408 F.2d 16 (9th Cir. 1969) (denial of motion under section 1404(a) not appealable); *Republic of Iraq v. First National City Bank,* 313 F.2d 194 (2d Cir.1963).

Thus, under the traditional view, at least as we have sketched it here, the order transferring venue would not be one over which we have appellate jurisdiction; at best, we could treat the appeal as a petition for a writ of mandamus, and apply the stringent standard of review applicable to requests for that writ. *See Gold v. Johns-Manville Sales Corp.,* 723 F.2d 1068 (3d Cir.1983).

### III.

It is submitted by the appellant, however, that this court's opinion in *Coastal Steel* altered the traditional law on the subject, or at least carved out an exception where the basis of a proposed transfer or dismissal was a forum selection clause in a contract underlying the dispute. There is indeed much to be said in support of this view. *Coastal Steel* involved an appeal from a district court order affirming an order of a bankruptcy court denying a forum non conveniens motion to dismiss the case on grounds that the contract underlying the dispute required controversies to be adjudicated in the courts of Great Britain. As we have suggested, under the view set out only two years earlier in *Compagnie Des Bauxites De Guinea v. Insurance Company of North America,* 651 F.2d 877, 887–88 (3d Cir.1981), the order of the district court was not appealable. The *Coastal Steel* majority distinguished the traditional transfer or forum non conveniens motion from a motion based on a forum selection clause, however, and held the order appealable.

The majority's opinion in *Coastal Steel* and its attempt to distinguish *Compagnie Des Bauxites* rested on two grounds: the *Enelow-Ettelson* doctrine and the collateral order exception of *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), to 28 U.S.C. § 1291. We now examine the applicability of these dual distinctions of *Compagnie Des Bauxites* to the present case.

### A.

In order to understand *Coastal Steel's* distinction of *Compagnie Des Bauxites*

and the applicability of *Coastal Steel* to the present case, it is unfortunately essential to take a lengthy excursion into the development of the *Enelow-Ettelson* doctrine. As it stands today, the *Enelow-Ettelson* doctrine involves an interpretation of 28 U.S.C. § 1292(a)(1). Section 1292(a)(1) allows appeals from interlocutory orders of the district court "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." The doctrine gives (or attempts to give) appellate courts a method for determining which of the many interlocutory orders of the district court that affect the progress of the civil action in which they are issued constitute "in their essence" an order enjoining or refusing to enjoin the civil action itself and thus come within the scope of section 1292(a)(1).

*Enelow v. New York Life Insurance Company,* 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935), a case decided before the complete merger of law and equity currently embodied in Fed.R.Civ.P. 2, but after the partial blending of law and equity engendered by the Law and Equity Act of 1915, 38 Stat. 956, marked the Supreme Court's first major attempt to interpret the predecessor to present section 1292(a)(1). The court there held that a district court order requiring prior disposition of a uniquely equitable defense (fraud) in a simple action brought at law (suit upon an insurance policy) constituted an immediately appealable order. "When an order or decree is made ... requiring, or refusing to require that an equitable defense shall first be tried, the court in exercising what is essentially equitable jurisdiction, in effect grants or refuses an injunction restraining proceedings at law precisely as if the court had acted upon a bill of complaint in a separate suit for the same purpose." 293 U.S. at 383, 55 S.Ct. at 311. The theory was, of course, that, by requiring prior determination of the equitable defense, the "equity chancellor" had enjoined the "law judge." The fact that the equity chancellor and the law judge were the same person did not matter. In a companion case decided the same day, *Shanferoke Coal & Sup-*

*ply Corp. v. Westchester Service Corporation,* 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583 (1935), the Supreme Court held that an order denying a defendant's motion to stay an action at law pending arbitration amounted also to denial of an injunction and was likewise immediately appealable under the predecessor of today's section 1292(a)(1).

The merger of law and equity engendered by enactment of the Federal Rules of Civil Procedure in 1938 placed the metaphysics of *Enelow* (and *Shanferoke* ) under considerable strain. If the merger was thought of as complete, an appellate court would have difficulty saying that prior determination of a uniquely equitable defense constituted an injunction of *another* judge or court; rather, an order to such effect would merely constitute case management by a single court. Since courts of law and equity had been performing case management for years without giving rise to immediately appealable interlocutory orders, this view of merger had the potential to kill off the *Enelow* doctrine entirely. If, on the other hand, the merger was thought of as incomplete or merely procedural, and not as destroying the historic separation of law and equity, the *Enelow* doctrine had room to continue.

*Ettelson v. Metropolitan Life Insurance Co.,* 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942), squarely presented the Supreme Court with the issue whether the *Enelow* doctrine was an artifact of pre-merger jurisprudence. Again, an insured brought a simple action at law on an insurance policy and the defendant raised an equitable counterclaim (fraud), which the district court ordered to be adjudicated first. The Supreme Court did not decide the appealability of the district court order requiring prior determination of the equitable counterclaim by examining the completeness of the merger between law and equity engendered by the intervening passage of the Federal Rules of Civil Procedure. Rather, the court looked to the "practical" or "substantial" effect of the order issued by the district court. "As in the *Enelow* case,"

wrote Justice Roberts for a unanimous court, "so here, the result of the District Judge's order is the postponement of trial of the jury action based upon the policies; and it may, in practical effect, terminate that action. It is as effective in these respects as an injunction issued by a chancellor." 317 U.S. at 191–92, 63 S.Ct. at 164.

Although sensitive to the needs of litigants and the judicial system, *Ettelson's* resolution of the appealability issue by reference to "practical effect" and without reliance upon the metaphysics that had sufficed until the complete merger of law and equity ultimately proved unstable. Its approach rested far from the statutory language allowing interlocutory appeals only from "injunctions"; the variety of interlocutory orders that had potentially devastating consequences on the progress of litigation placed the "practical effect" test in uneasy co-existence with the longstanding federal policy against "piecemeal appeals." Under these circumstances, it did not take long for new challenges to *Ettelson* to arise.

The first challenge to *Ettelson* came before the Supreme Court in 1949 in *City of Morgantown v. Royal Insurance Company*, 337 U.S. 254, 69 S.Ct. 1067, 93 L.Ed. 1347 (1949). There, an insured (the city) had appealed from a district court order denying it a jury trial upon a legal counterclaim in an equitable action for reformation of a contract brought by an insurance company. This order, maintained the city, had the practical effect of an injunction and was thus appealable. Although the Supreme Court might well have dismissed the appeal by following *Ettelson* and minimizing the delay to be engendered by denial of trial by jury, it eschewed that course of action. Instead, the court faced (if still obliquely) the issue it had avoided in *Ettelson* and examined the extent to which the *Enelow* doctrine survived the merger of

law and equity. Without explicitly overruling *Ettelson*,[2] the court stated:

> Whatever the present validity of the analogy to common-law practice which had supported [*Enelow and Ettelson*], it is of no help here. This is not a situation where a "chancellor" in denying a demand for jury trial can be said to be enjoining a "judge" who had cognizance of a pending action at law. This is rather a case of a judge making a ruling as to the manner in which he will try one issue in a civil action pending before himself. The fiction of a court with two sides, one of which can stay proceedings in the other, is not applicable where there is no other proceeding in existence to be stayed. The ruling from which the appeal in this case was prosecuted is an order interlocutory in form and substance. Nothing in the language of the rules or the Judicial Code brings it within the class of appealable decisions, and distinctions from common law practice which supported our conclusions in the Enelow and Ettelson cases supply no analogy competent to make an injunction of what in any ordinary understanding of the word is not one.

337 U.S. at 257–58, 69 S.Ct. at 1069.

The assault on *Ettelson* continued in *Baltimore Contractors v. Bodinger*, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955), in which the Supreme Court held that a district court order refusing to stay an action for an accounting pending arbitration was not appealable. Picking up on themes spun by the majority opinion in *Morgantown* and in Justice Frankfurter's concurrence in that case, the court noted the difficulty of accepting the viability of *Enelow* in a post-merger era.

> The reliance on the analogy of equity power to enjoin proceedings in other courts has elements of fiction in this day of one form of action. The incongruity of taking jurisdiction from a stay in a

---

**2.** Justices Black and Rutledge dissented on grounds that the majority opinion had overruled *Ettelson* without saying so. The dissent prompted a reply from Justice Frankfurter who, writing alone in concurrence, attempted to distinguish *Ettelson* from *Morgantown* on grounds that in *Ettelson* the equity chancellor had enjoined the law judge whereas in *Morgantown* the law judge had merely postponed the action at law.

law type and denying jurisdiction in an equity type proceeding springs from the persistence of outmoded procedural differentiations. Some simplification would follow from an assumption or denial of jurisdiction in both. The distinction has been applied for years, however, and we conclude that it is better judicial practice to follow the precedents which limit appealability of interlocutory orders, leaving Congress to make such amendments as it may find proper.

348 U.S. at 184–85, 75 S.Ct. at 254.

Recent case law of our circuit has taken due cognizance of the limited vitality of the *Enelow-Ettelson* doctrine in light of the *Bodinger* and *Morgantown* cases, which limited *Enelow* and *Ettelson* almost to their facts and deferred further lawmaking in this field to Congress. Thus, in *Gold v. Johns-Manville Sales Corp.,* 723 F.2d 1068, 1072–73 (3d Cir.1983), we required as a precondition for application of the *Enelow-Ettelson* doctrine that "(A) the action in which the order was made is an action which, before the fusion of law and equity, was by its nature an action at law; *and* (B) the stay was sought to permit the prior determination of some *equitable* defense or counterclaim." [3]

It is against this background that *Coastal Steel* must be understood. First, there was no question but that *Coastal Steel* was "an action at law." As we said, "what Coastal seeks is money damages for the alleged malfunctioning of a machine. This is classic legal relief." 709 F.2d at 194. The court was also able to characterize the defense offered in that case as an equitable one. In contrast to the traditional forum non conveniens (or transfer) motion made

in the interests of justice or for the convenience of witnesses, which could be considered in the days before merger by both a court of equity and a court of law,[4] a forum non conveniens motion predicated on a forum selection clause in a pre-existing contract was "in practical effect an application for specific performance of that contractual provision," and, hence, only within the power of equity to grant. Consequently, we held in *Coastal* that a motion to enforce a forum selection clause was "analytically indistinguishable from a motion to stay an action at law pending arbitration." 709 F.2d at 194.[5] This characterization of the motion underlying the appealed district court order placed the *Coastal* case right in the core of *Enelow* and *Shanferoke* and shielded it both from the assault on the *Enelow-Ettelson* doctrine made by cases such as *Morgantown* and *Bodinger* and from our own holding in *Compagnie Des Bauxites* that motions to dismiss on grounds of forum non conveniens were not generally appealable.

We believe that the facts in our case meet one of the prerequisites set forth by *Gold v. Johns-Manville Sales Corp.* for application of the *Enelow-Ettelson* doctrine, but, in light of the case law development detailed above, does not meet all the requirements set forth. As in *Coastal Steel,* we address a motion to alter the forum for adjudication based on a forum selection clause in a pre-existing contract. Specific enforcement of such a contract by granting the motion to transfer would seem just as much the exclusive province of the fictitious equity chancellor as was specific enforcement of the contract in

---

**3.** We borrowed this test from Chief Judge Tuttle's opinion for the Fifth Circuit in *Jackson Brewing Co. v. Clarke,* 303 F.2d 844, 845 (5th Cir.), *cert. denied,* 371 U.S. 891, 83 S.Ct. 190, 9 L.Ed.2d 124 (1962).

**4.** *See* Act of Sept. 8, 1916, Ch. 495, § 5, 39 Stat. 851.

**5.** In reaching this conclusion, the majority was compelled to extend the holding of *Shanferoke,* in which dismissal of the action resulted in its resolution by an arbitral tribunal, to a situation

where the action would be handled by a tribunal under the more direct control of a government. The majority had some authority for this extension, *see In re Unterweser Reederei G.M. B.H.,* 428 F.2d 888 (5th Cir.1970), *aff'd en banc,* 446 F.2d 907 (5th Cir.1971), *vacated on other grounds sub nom. The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *Alberto-Culver Company v. Scherk,* 484 F.2d 611 (7th Cir.1973), *rev'd on other grounds,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974).

*Coastal,* which would have led to dismissal of the action. Under the logic of *Coastal,* we can see no difference between the appealability of an order for dismissal based on a forum selection clause and a motion for transfer based on such a clause.[6]

The case at bar is distinguishable from *Coastal Steel,* however, in that the plaintiff seeks both legal and equitable relief; as we have discussed, *see supra* part I, plaintiff seeks rescission (an equitable remedy) as well as damages. If plaintiff sought only equitable relief, it would be clear from *Gold v. Johns-Manville Sales Corp., supra* and from the Supreme Court case law discussed above, that the order produced by the motion for transfer would not be appealable. Even accepting the fictions of *Enelow* and *Ettelson,* it could not then be said that the equity chancellor was (through specific enforcement) enjoining the law judge. Because the whole case would be in equity, the equity chancellor would be issuing only a case management order "in the only suit pending, actual or fictional." *Bodinger,* 348 U.S. at 184, 75 S.Ct. at 254. The question before us, then, is whether an order effectively requiring prior determination of an equitable defense (specific enforcement of a forum selection clause) yields an immediately appealable order where the plaintiff's complaint contains demands for both legal and equitable relief.

Based on our understanding of the *Morgantown-Bodinger* assault on the archaic fiction of the *Enelow-Ettelson* doctrine, we hold that an order requiring prior determination of some equitable defense or counterclaim is not immediately appealable where the underlying action contains a component cognizable only in equity or where it seeks both equitable and legal relief. It is true that we could plausibly

hold to the contrary and continue the *Enelow-Ettelson* fiction by saying that the equity chancellor in such circumstances would not only be issuing a case management order in the suit before him but would *also* be enjoining the law judge from granting the legal relief also sought by the plaintiff. But we believe that the Supreme Court has made clear in *Morgantown* and *Bodinger* that such extensions of the *Enelow-Ettelson* fiction of separate law and equity judges are not to be allowed. The message of these cases is that *Enelow* and *Ettelson* are to be narrowly construed in this era where law and equity are largely fused. Any extensions of their doctrines must come from Congress.

We thus hold that the order of the district court is not appealable under 28 U.S.C. § 1292(a) as the granting of an injunction.

### B.

As an alternative basis for its mandate, the *Coastal* majority held that the district court's order denying the motion to dismiss on grounds of forum non conveniens was appealable because it was a collateral final order as defined in *Cohen v. Beneficial Finance Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978), and their progeny. Under these cases, as the *Coastal* majority duly noted, 709 F.2d at 195, interlocutory orders are deemed final and are appealable under 28 U.S.C. § 1291 if "[1] they conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] [are] effectively unreviewable on appeal from a final judgment."

---

**6.** It is this point that Judge Hunter fails to consider in his concurrence. In the fourth paragraph of his concurrence, he argues that a motion to dismiss as in *Coastal Steel* is distinguishable from a motion to transfer. This is true, but not illuminating. Our difficult task is not aided by an England versus Utah distinction that has no relation to the *Enelow-Ettelson* doctrine, and upon which Judge Gibbons' erudite

opinion in *Coastal Steel* did not rest. Rather, our obligation is to consider how, if at all, in terms of the *Enelow-Ettelson* doctrine, a motion to dismiss based on a forum selection clause is any more an injunction against an action at law than a motion to transfer based on a forum selection clause. While we recognize that an imaginative distinction might be made, a simple ipse dixit will not do.

The *Coastal* court had no difficulty in concluding that an order denying a motion to dismiss based on forum non conveniens satisfied the first two steps of the *Coopers & Lybrand* test of collateral finality. In coming to the conclusion that the third step of the test was satisfied by such an order, the *Coastal* majority relied upon 28 U.S.C. § 2105 (1976), a statute that the concurring opinion called "obscure and ambiguous." 709 F.2d at 212 (Rosenn, J., concurring). That statute reads: "There shall be no reversal in the Supreme Court or a court of appeals for error in ruling upon matters in abatement which do not involve jurisdiction." The argument put forth was that, because section 2105 rendered review of such orders impossible on appeal from final judgment, the order was immediately appealable. The *Coastal* majority then stated:

> What is now included [under 28 U.S.C. § 2105], we suppose, are those non-jurisdictional motions which, if granted, would result in the dismissal of an action without prejudice to its reconsideration when refiled in another forum or in another pleading.... A motion for specific enforcement of a forum selection clause would seem to fit that mold. Such a motion is non-jurisdictional and has no direct bearing on the merits of the underlying dispute.

> If, as appears, section 2105 would apply to a forum selection clause motion in a post-trial appeal, a ruling denying a motion would appear to satisfy all three of the criteria for review under the *Cohen* doctrine announced in *Coopers & Lybrand*. Thus ... we hold that an order denying a pre-trial motion to enforce a forum selection clause is reviewable as a collaterally final order under section 1291."

709 F.2d at 196–97.

Thus, although the *Coastal* opinion initially hedges with phrases such as "we suppose" and "would seem," it ultimately holds that an order denying a motion to dismiss on grounds of forum non conveniens must be appealable on an interlocutory basis, at least where the validity or reason-ableness of a forum selection clause underlies disposition of the order. Although it is true that the majority opinion never holds in haec verba that 28 U.S.C. § 2105 bars final review of a forum non conveniens motion, that thesis is the linchpin of the result reached in the case and is as much a part of the holding of that case as anything more explicitly declared.

Although the analysis is involved, we believe that *Coastal* does not compel us to hold that an order granting or denying a venue transfer motion under 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a) is a "matter in abatement" for purposes of 28 U.S.C. § 2105 or that such an order is consequently collaterally final. Our holding on this point stems from an examination of the definition of "matter in abatement" implicitly relied upon in *Coastal Steel*, our understanding of the distinction between transfer of a case to another federal court and dismissal of case, and from the otherwise impossible task of reconciling *Coastal Steel* with the decision of the Supreme Court in *Hoffman v. Blaski*, 363 U.S. 335, 340 n. 9, 80 S.Ct. 1084, 1088 n. 9, 4 L.Ed.2d 1254 (1960).

According to the authorities cited by *Coastal Steel*, a matter in abatement is a matter that *defeats* an action but that does not prevent it from being *commenced* in a better way. Thus, when, as in *Coastal Steel*, the court is asked to dismiss a lawsuit so that it may be commenced in Great Britain, the court under *Coastal Steel* apparently is faced with a matter in abatement for purposes of section 2105. When, however, the court is asked merely to transfer an action to another federal court, the original action is not "defeated." The venue of the original action is simply altered. Nor is the action "commenced" when it is transferred to another court. Under the Federal Rules of Civil Procedure, "a civil action is commenced by filing a complaint with the court." Fed.R.Civ.P. 3. When an action is transferred, "commencement" has already occurred. While we recognize that a Federal Rule of Civil Procedure written for possibly differing

purposes is not an absolutely binding source for interpretation of a statute—or of a gloss put upon a statute by prior courts—we see no reason to quarrel with its conclusion that transfer of an action does not constitute commencement of an action and the corollary that an order disposing of a motion to transfer is consequently not a matter in abatement for purposes of 28 U.S.C. § 2105.

This understanding of matters in abatement is fortified by *Hoffman v. Blaski,* 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960). In *Hoffman,* the Supreme Court reviewed the method by which a plaintiff who had brought suit in federal district court in Texas could obtain review of what it felt was a wrongful order transferring his case to federal district court in Illinois and a wrongful refusal of the Illinois district court to re-transfer the case back to Texas. The plaintiff had sought a writ of mandamus from the Fifth Circuit challenging the transfer order of the Texas court and a writ of mandamus from the Seventh Circuit challenging the refusal of the Illinois court to re-transfer. In footnote 9, the Supreme Court wrote:

> The orders of the Texas and Illinois District Courts on the respective motions to

transfer and to remand, like the orders of the Fifth and Seventh Circuits on the respective petitions for mandamus, were (1) interlocutory, (2) not upon the merits, and (3) were entered in the same case by courts of coordinate jurisdiction. Here the sole basis of the right of the Fifth Circuit to entertain the petition for a writ of mandamus was to protect its appellate jurisdiction ... and, by denying leave to file the petition, it forsook such right, but it did not thereby determine that the Illinois District Court had jurisdiction of that action. The question of that court's jurisdiction still remained subject to attack as of right on appeal to the Seventh Circuit from any final judgment in the action.

Thus, in this last sentence, the Supreme Court, which had 28 U.S.C. § 2105 at least constructively before it, held that wrongly decided transfer motions could be asserted as grounds for error on appeal from final judgment.[7] Therefore, whatever might be the case for motions to dismiss on grounds of forum non conveniens,[8] orders granting or denying motions to transfer under 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a) are not immediately appealable under 28 U.S.C. § 1291 as collaterally final orders.[9] It is

---

**7.** The objection that the *Hoffman* court spoke in terms of *jurisdiction* rather than venue and that 28 U.S.C. § 2105 does not bar claims of error founded on *jurisdiction* does not diminish the relevance of the cited sentence. Jurisdiction and venue are often used loosely. It is clear that the issue before the reviewing court after final judgment in the *Hoffman* case, which involved patent infringement, would be whether venue existed in the Illinois district court. There could be no question that subject matter jurisdiction existed. 28 U.S.C. § 1338(a) grants all district courts in the United States jurisdiction over patent claims. Thus, although the Supreme Court used the word "jurisdiction" in describing the issue that would be before the appellate court, more technically put, it meant "venue."

**8.** *Coastal Steel* may be in some tension with *Compagnie Des Bauxites De Guinea v. Insurance Company of North America,* 651 F.2d 877 (3d Cir.1981), which held that an order denying dismissal on the basis of forum non conveniens was not appealable under 28 U.S.C. § 1291. Perhaps, however, it is the instruction of *Coastal*

*Steel* that a motion to dismiss on grounds of forum non conveniens is more a "matter in abatement" when predicated on a forum selection clause than when predicated on factors such as the convenience of witnesses.

**9.** This circuit's decision in *Hayman Cash Register Co. v. Sarokin,* 669 F.2d 162 (3d Cir.1982), which limited *Hoffman v. Blaski,* does not undercut our holding here. In *Hayman Cash Register* we held that law of the case prohibited the transferee *district court* from ruling that venue did not properly lie in the transferee district when the transferor district court had already determined for purposes of 28 U.S.C. § 1406 that venue did lie in the transferee district. But while law of the case may preclude coordinate district courts from overruling each other, it would not have prevented the transferee circuit court (the Third Circuit) from in effect overruling on appeal from final judgment (or conceivably mandamus) the determination of the transferor district court as to the determination of venue. Thus, the decision of the transferor district court to transfer venue is not collaterally final, even in light of *Hayman Cash Register.*

irrelevant for these purposes whether the motion to transfer is based on a forum selection clause, the convenience of witnesses, or other factors. In conclusion, we hold that *Coastal Steel* does not apply to this case and that the order issued by the district court in this case is not appealable. We thus turn to the mandamus issue.

## IV.

■ Under established precedents in this Circuit, this court has the discretion to treat an improper claim to an appeal as of right as petition for mandamus, at least when the exercise of discretionary review would not severely prejudice any of the litigants and the party seeking relief is barred from all avenues of immediate appeal. *See Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1074 (3d Cir.1983). Under the circumstances of this case, we believe that mandamus review is appropriate.

Several factors influence our decision. As a general matter, if the district court errs in interpreting contracts said to contain forum selection clauses or seriously errs in finding them reasonable, it works a serious hardship on a plaintiff who is then forced to take his case to a distant forum. While it is true that plaintiff still has various avenues of relief available to him, *see supra* part I, he is disadvantaged in the meantime and the judicial system is compelled to waste significant resources. Of course, this rationale may prove too much, since it provides an argument for appellate review of virtually every interlocutory order. Second, therefore, in our consideration of whether mandamus review is appropriate, is the extent of the hardship on plaintiff. While modern methods of communication and transportation have significantly reduced the burden associated with adjudication in a different state, we take judicial notice of the distance between Western Pennsylvania and Utah. In real terms, transfer of venue to Utah may deprive the plaintiff not only of the forum of his choice, but also of the attorney of his choice. Third, we note that transfer based on a forum selection clause in a contract is,

unlike the myriad factual considerations relevant to the exercise of discretion in a standard transfer situation, suffused with legal issues, such as the applicability of the forum selection clause and its reasonableness. The appellate court, therefore, may be of particular assistance to the district court. Finally, we note that Nascone may have been confused by the prior state of the law of appealability into believing that a petition for mandamus was not necessary.

■ Having said all this, we believe that the constructive petition for mandamus is devoid of merit. Nascone argues that the dispute in this case is under the Area Franchise Agreement, which does not contain an explicit forum selection clause, and not the McKnight agreement, which does contain such a clause. Nascone is estopped from making such an argument, however, by his own pleadings in which he has alleged a breach of *both* agreements. Given that the dispute under the McKnight Agreement should therefore be sent to Utah (unless the forum selection clause is unreasonable), given that Utah law applies to both agreements, and given the inefficiency of trying parts of this case in Utah and parts in the Western District of Pennsylvania, we believe the district court did not clearly err in issuing its order transferring venue. The case does not come remotely close to meeting the high standards for mandamus, i.e., "clear legal error calling for relief that can be obtained through no other means." *Gold v. Johns-Manville Sales Corp.*, 723 F.2d at 1074.

Nascone also asserts that Utah law applies to the enforceability of a forum selection clause and that Utah, unlike most states, would not enforce such a clause, even if it were reasonable. The plaintiff argues that the "neighboring states" of Texas and Missouri have a more restrictive attitude toward forum selection clauses than the state of Pennsylvania and that Utah, although itself silent on the matter, would likely follow its neighbors. We find this argument unpersuasive. Nascone's zeal overrides his geography: Texas and

Missouri are not "neighboring states" of Utah but in fact lie approximately 350 and 700 miles respectively from Utah's borders. More importantly, we see nothing that would make a state's views on the enforceability of forum selection clauses correspond with its geography. While Utah might give Texas law more force than Pennsylvania law in areas such as water rights, we doubt it would do so in determining such an abstract issue such as that involved in this case. Rather, we believe that Utah, if its law indeed applies, and if it would indeed want Pennsylvania to apply Utah forum selection clause law, would follow the majority rule and examine whether the forum selection clause was reasonable or not. *See The Bremen v. Zapata Off Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (admiralty). Since plaintiff has not even argued that the forum selection clause is unreasonable, we find absolutely no basis on which to issue a writ of mandamus.

## V.

In conclusion, we dismiss the appeal on grounds that, under the circumstances outlined herein, we do not have appellate jurisdiction at this time over the order issued by the district court in this case transferring venue to the District of Utah. We also deny the constructive petition for a writ of mandamus.

JAMES HUNTER, III, Circuit Judge, concurring:

I concur. I was in the majority in *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190 (3d Cir.1983), a case that receives considerable attention in the majority opinion here. I adhere to my position in *Coastal Steel*, because I believe it was right for that case. I vote here for the opposite result, because I believe this case to be different.

Defendants in *Coastal Steel* moved to dismiss the federal action in favor of trial in the English courts. Defendants here moved only to transfer the federal action to another federal court. That, to me, is a

crucial difference between the cases. The grant or denial of a motion requiring parties to leave federal court and go into a foreign court whose procedural rules and substantive law are likely to be quite different in material respects will certainly have an effect on the litigation that is basic and an effect that transcends the problems of convenience that are implicated in a mere transfer to another federal court in this country. A decision on the motion to dismiss, grounded on a choice of forum clause (engaging a foreign jurisdiction), will determine the parties' rights and liabilities with a "finality" that is not present in a transfer. It is more important—certainly to the parties, and to basic fairness—to provide immediate review in the former instance.

Further, I believe that this is the better analytical approach. Judge Gibbons in *Coastal Steel* found mandatory jurisdiction to review the district court's denial of the motion to dismiss via two paths: the *Enelow-Ettelson* approach, and the *Cohen* "collateral finality" approach. The majority opinion in this case analyzes each approach, and in the end distinguishes this case from *Coastal Steel*. I find it preferable simply to distinguish this case.

The *Enelow-Ettelson* rule requires the overlay of an equitable defense or counterclaim on a legal action. *Coastal Steel* held that a motion to dismiss an action to give effect to a forum selection clause "is analytically indistinguishable from a motion to stay an action at law pending arbitration"—one of the classic *Enelow-Ettelson* situations. 709 F.2d at 194 (citing *Shanferoke Coal & Supply Corp. v. Westchester Service Corp.*, 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583 (1935)). That is correct. In *Coastal Steel* and *Shanferoke*, the effect of the order sought by movant was to end a federal court proceeding and to place the dispute in a sharply different proceeding. In the present case, however, we have not a motion to dismiss but a motion to transfer within the federal system. I find a motion to transfer effectively distinguishable from a motion to stay pending arbitra-

tion, and I would simply hold that *Enelow-Ettelson* has no application to motions to transfer.

The second jurisdictional "hook" we identified in *Coastal Steel* was the *Cohen* "collaterally final" exception to the final order rule of section 1291. 28 U.S.C. § 1291 (1982). The majority probes our treatment of the *Cohen* exception in *Coastal Steel*, before concluding that a motion to transfer—unlike a motion to dismiss on forum non conveniens grounds—is not a "matter in abatement" as described in *Coastal Steel*. I agree with the majority's analysis and eventual conclusion. But consistent with the approach I have outlined to this point, I would have proceeded through that analysis and to that conclusion more directly.

The majority opinion in *Coastal Steel*, which I joined, has not met with universal acceptance. In joining those questioning it, the majority here loses sight of what I believe are the essential differences between this case and *Coastal Steel*. Fortunately, our separate analyses lead to the same result. I therefore respectfully concur.