

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-3-2001

# In Re: USA

Precedential or Non-Precedential:

Docket 01-2562

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"In Re: USA" (2001). *2001 Decisions.* Paper 280.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/280

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 21, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-2562

IN RE: UNITED STATES OF AMERICA,
       Petitioner

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 00-cr-00477-2)
District Judge: Hon. Berle M. Schiller

Argued November 2, 2001

Before: SLOVITER, NYGAARD, and CUDAHY,*
Circuit Judges

(Filed: November 21, 2001)

---

* Hon. Richard D. Cudahy, United States Court of Appeals for the
Seventh Circuit, sitting by designation.

Michael L. Levy
 United States Attorney
Robert A. Zauzmer
 Assistant United States Attorney
 Chief of Appeals
Richard J. Zack (ARGUED)
 Assistant United States Attorney
Philadelphia, PA 19106-4476

 Attorneys for Petitioner

Lynanne B. Wescott (ARGUED)
Saul Ewing LLP
Philadelphia, PA 19102

 Attorney for Respondent

OPINION OF THE COURT

SLOVITER, Circuit Judge.

This case is before us on a petition by the United States for a writ of mandamus directing a District Judge of the Eastern District of Pennsylvania to vacate his order transferring this criminal action against defendant Ruth Streeval to Tennessee and to refrain from transferring the case unless the showing and findings required by Fed. R. Crim. P. 21(b) have been made. At issue before us is not the discretionary decision to transfer vel non  but the procedure to be followed before such a transfer order is entered.

I.

BACKGROUND

On August 17, 2000, Ruth Streeval and Lollie Binkley, Streeval's sister, were charged by a grand jury sitting in the Eastern District of Pennsylvania in a nine-count indictment with mail fraud, wire fraud, conspiracy to commit mail fraud, wire fraud, and money laundering, and aiding and abetting. Binkley was also charged with money laundering

and criminal forfeiture. Streeval was, by agreement, arraigned near her residence in the Middle District of Tennessee due to her alleged poor health. She subsequently filed a motion for severance and transfer. The judge then presiding denied the motion on February 9, 2001.

Binkley pled guilty to all counts charged, and was sentenced to twenty-seven months imprisonment, supervised release, and payment of restitution. On May 7, 2001, Streeval, who pled not guilty, renewed her motion for severance and transfer to Tennessee. On May 8, 2001, the District Judge who now presided granted the renewed motion. On May 16, 2001, after a six-day stay, the District Court denied the government's request for reconsideration of the motion to transfer. On June 18, 2001, the government sought a writ of mandamus to compel the District Court to reconsider its order transferring this case to Tennessee.

In the interim, on May 29, 2001, in accordance with Fed. R. Crim. P. 21(c), the Middle District of Tennessee received from the Eastern District of Pennsylvania a copy of the order severing and transferring the case, the original record of this case, and Streeval's indictment, which in turn was filed in Tennessee. The case was docketed as 01-CR-84 and assigned to Judge Todd Campbell, who scheduled the case for prompt trial. After Judge Campbell was advised of the challenge to the transfer and this court's decision to hear argument on the matter, he rescheduled the trial date to February 26, 2001.1

II.

DISCUSSION

A. Jurisdiction

The most hotly contested issue, and the one that gives us

_____

1. We are most appreciative of Judge Campbell's accommodation, which enabled this court to consider the matter and prevented an unseemly tension between federal jurisdictions. We undertook to rule on the appeal as promptly as possible.

3

the most pause, is that of our remaining jurisdiction. Of course, the District Court originally had jurisdiction over the criminal case pursuant to 18 U.S.C. S 3231. This court has jurisdiction over a petition for a writ of mandamus pursuant to 28 U.S.C. S1651(a). Streeval and the District Court2 argue that courts of this circuit no longer retain jurisdiction in this case because it has been transferred to Tennessee.

Fed. R. Crim. P. 21(b), the rule that Streeval invoked in seeking transfer, provides that "[f]or the convenience of parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding as to that defendant or any one or more of the counts thereof to another district." We have interpreted the comparable civil rule to mean that when a transfer of a case has been completed, " `the transferor court--and the appellate court that has jurisdiction over it--lose all jurisdiction over the case.' " White v. ABCO Eng'g Corp., 199 F.3d 140, 143 n.4 (3d Cir. 1999) (quoting 15 Charles Wright, et al., Federal Practice and Procedure S 3846 at 357 (2d ed. 1986)). Typically, the transferor court loses jurisdiction when the physical record is transferred. Hudson United Bank v. Chase Manhattan Bank, 43 F.3d 843, 845–46 n.4 (3d Cir. 1994); Wilson-Cook Med., Inc. v. Wilson, 942 F.2d 247, 250 (4th Cir. 1991) (citing Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1516–17 (10th Cir. 1991)). Nonetheless, in language particularly apt here, we have noted that "shifting papers cannot validate an otherwise invalid transfer." White, 199 F.3d at 143 n.4; see also Warrick v. General Elec. Co. (In re Warrick), 70 F.3d 736, 739–40 (2d Cir. 1995). Although White involved a civil case rather than a criminal case, and thus transfer was pursuant to 28 U.S.C. S1404(a) rather than Fed. R. Crim. P. 21(b), the language of Rule 21(b) was

_____

2. The District Court, exercising the option accorded to it by 3rd Cir. R. 3.1 (2001), which allows a district judge to file an opinion or memorandum to explain an order or decision after an appeal is taken, filed a memorandum that, in addition to summarizing the reasons for transfer, includes arguments why this court should not grant mandamus, more akin to an adversarial brief of a party than a "written amplification" of a prior order for which the Rule is designed.

4

taken from S1404(a) and "decisions construing that statute
. . . provide helpful analogies" for understanding Rule 21(b).
2 Wright, Federal Practice and Procedure S 344 (3d ed.
2000); see also United States v. McManus, 535 F. 2d 460,
463 (8th Cir. 1976); Jones v. Gasch, 404 F.2d 1231, 1236-
37 (D.C. Cir. 1967).

The government argues that this court retains
jurisdiction because "the only document of legal
significance, the indictment, remains in [the Eastern
District of Pennsylvania]." Br. of Government at 7. Although
a copy of the indictment was sent to the Middle District of
Tennessee, the indictment was retained because Streeval's
co-defendant had pled guilty and her sentencing had not
been concluded at that time. App. at 12-13. We need not
evaluate this argument in light of far more compelling
considerations.3

The government argues, and we agree, that this court
retains jurisdiction for purpose of evaluating the legitimacy
of the transfer. In White, a magistrate judge in the
Southern District of New York attempted to transfer a case
to the District of New Jersey under 28 U.S.C. S 1404(a) by
writing "so ordered" under a stipulation signed by the judge
and the parties. This court determined that such an "inter-
district transfer by stipulation" was invalid. White, 199 F.3d
at 143 (emphasis omitted). We ordered the appeal
transferred to the Court of Appeals for the Second Circuit
pursuant to 28 U.S.C. S1631, which allows for transfer
from an appellate court that does not have jurisdiction to
one that does. Id. at 145-46. Although we did not spell out
in White general criteria for deciding when a transfer is

_____

3. The government also argues that the transfer was invalid because the
District Court's order transferred the case to the "non-existent `District
of Tennessee.' " Br. of Government at 14. Although the District Court did
not specify to which of the three judicial districts in Tennessee the case
was being transferred, it was clear from the context of this case and the
fact that Streeval was arraigned in the Middle District of Tennessee that
the Middle District was the intended transferee district; indeed, the
court
clerk did send the relevant papers to that district. The government does
not cite any case that suggests that a transfer will be invalidated on
such a minor technical point and we are not persuaded by this aspect
of the government's argument.

valid, the fact that we exercised jurisdiction over the case when one of the parties challenged the validity of the transfer demonstrates that we implicitly acknowledged our jurisdiction to make a determination concerning the validity of a transfer.

The justification for this rule is clear. A district court cannot divest an appellate court of jurisdiction by the mere expedient of ordering a transfer of the file documents to any other district court without following procedures established for such a transfer. The proposition is not a new one. Indeed, we have asserted in numerous cases our retention of jurisdiction for purposes of evaluating the legitimacy of a transfer. See, e.g., Solomon v. Cont'l Am. Life Ins. Co., 472 F.2d 1043, 1045 (3d Cir. 1972) (noting "when the district court has acted without following appropriate procedural safeguards, we will . . . confine it in exercising that discretion"); Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970); Swindell–Dressler Corp. v. Dumbauld, 308 F.2d 267, 274–75 (3d Cir. 1962).4

This is not to say that an appellate court indefinitely maintains jurisdiction for purposes of evaluating the effectiveness of a transfer. Obviously, once the transferee court proceeds with the transferred case, the decision as to the propriety of transfer is to be made in the transferee court. However, it is preferable that there be a process that allows for prompt review of the transfer by the court of appeals of the transferor circuit. To accomplish that, some courts have adopted a standard procedure of automatically granting a stay of a transfer for a specified period of time. For example, the Eastern District of Pennsylvania, following a suggestion of this court in Swindell–Dressler , 308 F.2d at 274 n.11, promulgated a local rule whereby a transfer order is automatically stayed for twenty days, absent expedition. See E.D. Pa. R. 3.2.5 Unfortunately, that rule does not

_____

4. While all these cases are civil cases and thus involved transfer under 28 U.S.C. S 1404(a), as noted above, the language in rule 21(b) is analogous to S 1404(a).

5. See, e.g., D. Conn. R. Civ. P. 18 (directing the court clerk to wait until
the eleventh day following the order of transfer to mail the papers). S.D. & E.D.N.Y.R. Civ. P. 83.1 (requiring the court clerk to wait five days

6

extend to criminal cases. If it did, the current situation
would have been avoided. Even in the absence of such an
applicable local rule, and without delineating the specific
length of time needed to allow the party resisting transfer to
seek review by an appropriate means, the government acted
with sufficient dispatch here that we have jurisdiction to
consider its petition for mandamus.

B. Suitability of Mandamus

We turn to consider whether mandamus is an
appropriate means to review the transfer in this case. In
general, an order transferring a case is not a final order
and, hence, not appealable. See, e.g., Nascone v. Spudnuts,
Inc., 735 F.2d 763, 764 (3d Cir. 1984).6 While 28 U.S.C.
S1651(a) grants federal courts the general power to issue
writs, it is widely accepted that mandamus is extraordinary
relief that is rarely invoked. See, e.g., In re Patenaude, 210
F.3d 135, 140 (3d Cir. 2000); In re Balsimo, 68 F.3d 185,
186 (7th Cir. 1995); Solomon, 472 F.2d at 1045-46; 16
Wright, et al., Federal Practice and Procedure,S 2936.2, at
667 (2d ed. 1996). In Will v. United States, 389 U.S. 90
(1967), the Supreme Court discussed the exceptional
nature of the remedy of mandamus and, in addition,
expressed "an awareness of additional considerations which
flow from the fact that the underlying proceeding is a
criminal prosecution." Id. at 96. Nonetheless, the Court
recognized that "mandamus may . . . be used [in certain

_____

before transferring a case to another district); see also Roofing & Sheet
Metal Servs., Inc. v. La Quinta Motor Inns, Inc., 689 F.2d 982, 988-89
n.10 (11th Cir. 1982); Semro v. Halstead Enters., Inc., 619 F. Supp. 682,
683 (N.D. Ill. 1985) (noting that "the [c]lerk in this district has a
general
policy of holding transfer papers for at least thirty days" before
transferring to afford non-moving party an opportunity to seek
mandamus review); 15 Wright, et al., Federal Practice and Procedure
S 3846, at 357 (2d ed. 1986) (endorsing the practice of granting a stay of
transfer in the civil context for a sufficient period to allow for an
opportunity to file for appellate review).

6. See also United States v. French, 787 F.2d 1381, 1384 (9th Cir. 1986);
United States v. Nat'l City Lines, 334 U.S. 573, 574 (1948) ("[I]t is . .
.
doubtful whether the government ha[s] a right to appeal from [an] order
of transfer in [a] criminal case.").

7

circumstances] to review procedural orders in criminal cases." Id. at 97. The Court did "not decide under what circumstances, if any, such a use of mandamus would be appropriate," id. at 98, but suggested as relevant to that decision "the constitutional precepts that a man is entitled to a speedy trial and that he may not be placed twice in jeopardy for the same offense." Id.

This court has held that a writ of mandamus may issue to compel a district court to vacate an order transferring a case to another district. Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir. 1973); see also Swindell-Dressler, 308 F.2d at 271. More recently, the Court of Appeals for the Seventh Circuit held that the same rule applies in the criminal context. See Balsimo, 68 F.3d at 186. Although we have stated that mandamus relief will "rarely if ever" be granted directed to transfer orders, as this court has aptly put it, "rarely if ever d[oes] not mean never." Solomon, 472 F.2d at 1045. Therefore, as "[m]andamus is . . . the appropriate mechanism for reviewing an allegedly improper transfer order," Sunbelt Corp. v. Noble, Denton & Assoc., 5 F.3d 28, 30 (3d Cir. 1994), it is appropriate for us to consider whether we should grant the government's petition for mandamus.

C. The Motion to Transfer

In deciding whether a writ of mandamus should issue with respect to an order to transfer, we must take into consideration that, other than mandamus, the petitioner has no means of adequate relief, Mallard v. United States Dist. Court, 490 U.S. 296, 309 (1989) (setting out the showing required for issuance of mandamus), and that the transfer, if erroneous, may cause irreparable injury. United States v. Wexler, 31 F.2d 117, 128 (3d Cir. 1994). As we noted at the outset, the government does not attempt to make its arguments against the motion to transfer before this court. Rather, it asks us to use our mandamus power to require the District Court to reconsider its order transferring the case and, in so doing, to follow certain procedures. Specifically, the government requests that this court order the District Court to (1) require Streeval to meet the burden of establishing the appropriateness of transfer by specific evidence, (2) give the government adequate

8

opportunity to respond to Streeval's arguments and evidence in support of transfer, and (3) make findings and give reasons for its decision with respect to the transfer motion.

In support of its petition, the government focuses on three cases decided by this court: Swindell-Dressler, Solomon and Plum Tree. In Swindell-Dressler, a district judge "of his own volition and without any motion or petition by one or any of the parties, and without hearing, and without giving Swindell notice or opportunity to be heard, . . . transferred [the case] to the United States District Court for the Northern District of West Virginia." Swindell-Dressler, 308 F.2d at 271. We disapproved the procedure followed by the district court, holding that by "denying Swindell any hearing or opportunity for hearing the court below denied it procedural due process of law guaranteed to it by the Fifth Amendment." Id. at 273-74. We issued a writ of mandamus. Id. at 275.

In Solomon, we were again presented with a petition for mandamus as to an order by the district judge transferring a case seeking recovery on various insurance policies to the Middle District of North Carolina, which was the situs of the accident that was the subject of the suit. This court interpreted Swindell-Dressler as holding that "when the district court has acted without following appropriate procedural safeguards, we will by the writ [of mandamus] confine it in exercising that discretion to the narrow path of due process." Solomon, 472 F.2d at 1045. We held, however, that the facts presented in Solomon were distinguishable from Swindell-Dressler because "the district court proceeded after appropriate notice, and the petitioners opposing transfer had the opportunity to file opposing affidavits." Id. at 1046. Further, we stated that although a writ of mandamus might appropriately issue when a case was transferred where "nothing in the record indicates that the transferee district will be convenient to anyone," id., the Solomon case was not of that sort, and we thus denied the petition for mandamus.

In Plum Tree, the district court granted defendants' motion for a transfer to the United States District Court for the Southern District of Texas, even though defendants did

9

not file any supporting documents to show that a transfer would be appropriate. Plaintiffs, who strongly opposed the transfer, filed a petition for a writ of mandamus. We agreed with plaintiffs, commenting that "there was no evidence before the district court upon which it could base a finding that a transfer order was justified." 488 F.2d at 756. In particular, defendants failed to "support their motion to transfer with any affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer," id. at 756–57, such as:

> names and addresses of witnesses whom the moving party plans to call, . . . affidavits showing the materiality of the matter to which these witnesses will testify, statements by the moving part[y] of the business difficulties or personal hardships that might result from . . . having to defend against the suit in the district court where it was originally brought, affidavits concerning the relative ease of access to sources of documentary evidence, and other materials where appropriate.

Id. at 757 n.2. Because the district court did not have before it adequate grounds for ordering a transfer, we ordered that it vacate the order "without prejudice to the right of defendants on remand to renew in the district court their motion for transfer, with appropriate supporting documents." Id. at 757.

Of the cases decided by this court, Plum Tree is most similar to the present case. Streeval, the party requesting transfer, did not present "affidavits, depositions, [or] stipulations," id. at 756, and the District Court did not hold a hearing concerning the motion to transfer at which Streeval had the burden to establish the appropriateness of transfer and the government had the opportunity to respond to Streeval's arguments for transfer.

Streeval argues that in contrast to Plum Tree , there was evidence in the present case to support the transfer order. She refers in particular to the fact that the government did not oppose her motion to be arraigned in Tennessee, noting that the FBI had observed that she appeared at her

arraignment in a wheelchair, and that not only is she herself handicapped but that she is the caretaker for her ill husband. She points out that the government's list of witnesses filed in the Eastern District of Pennsylvania included only some witnesses from the Philadelphia area but also some from Tennessee and others that are geographically dispersed. She also asserts, but without specificity, that any evidence for the defense would be located in Tennessee, and notes that none of the offenses is alleged to have been committed in Pennsylvania. App. at 29-30.

Because the government abjures arguing the merits of the transfer, its focus is on the procedure followed by the District Court before it ordered the transfer. Whether to transfer a case is generally committed to the discretion of the district courts. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981). We have been reluctant to put specific requirements on the process by which the district courts decide motions to transfer, see, e.g., Solomon, 472 F.2d at 1047-48; Plum Tree, 488 F.2d at 756; White, 199 F.3d at 144, undoubtedly because of concern that imposition of stringent procedural hurdles might interfere unduly with the exercise of the courts' discretion.

On the other hand, the case law suggests that there are certain minimum procedures that should be followed before ruling on a motion to transfer. It would appear evident that the party objecting to transfer must be given an opportunity to rebut the arguments and the evidence, if any, offered by the movant in favor of transfer. Also, it is helpful when the district court provides a statement of reasons for granting the motion to transfer so that the appellate court has a basis to determine whether the district court soundly exercised its discretion and considered the appropriate factors. See generally United States v. Criden , 648 F. 2d 814, 819 (3d Cir. 1981). It is not necessary that the transfer order be accompanied by a lengthy statement-- such as the eight-page opinion in United States v. Coffee, 113 F. Supp. 2d 751 (E.D. Pa. 2000), describing the court's reasons for transferring a case -- as long as there is a sufficient explanation of the factors considered, the weight accorded them, and the balancing performed.

11

Most important is that the district court's explanation for the transfer demonstrate that the court recognized the nature of the showing that must be made to support a transfer and the parties' respective burdens. In Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240 (1964), a criminal antitrust case, the Supreme Court enumerated ten factors that should be considered by a court in deciding whether to transfer a case. They are:

> (1) location of [the] . . . defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of [the] place of trial; (9) docket condition of each district . . . involved; and (10) any other special elements which might affect the transfer.

Id. at 243–44 (quotation omitted). Although Platt involved a corporate defendant, the ten Platt factors are used in cases involving individual defendants as well. A balance should be struck among the most important factors in the particular case to determine whether transfer is appropriate. See, e.g., United States v. Stephenson, 895 F.2d 867, 875 (2d Cir. 1990).

As to the burdens of proof, this court has stated in 28 U.S.C. S 1404(a) cases that "[t]he burden is on the moving party to establish that a balancing of proper interests weigh in favor of the transfer." Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970); see also Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995); Elbeco Inc. v. Estrella de Plato, Corp. 989 F. Supp. 669, 679 (E.D. Pa. 1997); 15 Wright et al., Federal Practice and Procedure S 3848, at 383 (2d ed. 1986). While the burden is on the defendant, the defendant is not required to show"truly compelling circumstances for . . . change . . . .[of venue, but rather that] all relevant things considered, the case would be better off transferred to another district." Balsimo, 68 F.3d at 187.

It is not surprising given the similarity between the language of S 1404(a) providing the standard governing

12

transfer of civil cases ("[f]or the convenience of parties and witnesses, in the interest of justice") and that of Rule 21(b) governing transfer of criminal cases ("[f]or the convenience of parties and witnesses, and in the interest of justice"), that the courts have held that the criminal defendant has the burden of making the case for transfer. See, e.g., United States v. Spy Factory, Inc., 951 F. Supp. 450, 464 (S.D.N.Y 1997) (" `[T]he burden is on the moving defendant to justify a transfer under Rule 21(b).' ") (quoting United States v. Aronoff, 463 F. Supp. 454, 461 (S.D.N.Y. 1978)); United States v. Washington, 813 F. Supp. 269, 275 (D. Vt. 1993); United States v. Long, 697 F. Supp. 651, 656 (S.D.N.Y. 1988), rev'd on other grounds 917 F.2d. 691 (2d Cir. 1990); United States v. Wheaton, 463 F. Supp. 1073 (S.D.N.Y. 1979); Aronoff, 463 F. Supp. at 461; United States v. Ashland Oil, Inc., 457 F. Supp. 661, 665 (D. Ky. 1978) (denying defendant's request to transfer case to the district of his residence in light of his ill health because his health was not so severely impaired, he was not bedridden, and he had not been hospitalized); see also 2 Wright, Federal Practice and Procedure S 344, at 403 (3d ed. 2000) ("[I]t is proper to require the defendant, as the moving party, to carry the burden of showing why a transfer would serve the purposes specified in [Rule 21(b)]"); 25 James Wm. Moore et al., Moore's Federal Practice S 621.04[2], at 621 19 (3d ed. 2001) ("To obtain a `convenience' transfer pursuant to Rule 21(b), the defendant must show that litigating the trial in the district from which transfer is sought . . . either burdens the defense or creates undue prejudice against the defendant.").

It is important not to overlook the Supreme Court's statement in Platt that a defendant is not entitled to defend his case in his or her home district. See Platt , 376 U.S. at 245–46. That proposition has been frequently relied on as one of the bases for denying transfer in criminal cases, see, e.g., United States v. Bittner, 728 F.2d 1038, 1041 (8th Cir. 1984); United States v. Kopituk, 690 F.2d 1289, 1322 (11th Cir. 1982); United States v. Espinoza, 641 F.2d 153, 162 (4th Cir. 1981).

In this case, the government complains that the District Court granted Streeval's motion for a transfer, even before

13

the government received a copy of the motion, without waiting for the government's response, and that the court acted by filing a one-line order that gave no reasons for the transfer. While the government's frustration is understandable, these omissions would not in themselves warrant mandamus. Under the procedure in Swindell-Dressler, the government had an opportunity to put forth its argument in opposition to the transfer in its motion for reconsideration. Admittedly, it may be more difficult to persuade a judge that a decision already made to transfer the case should be vacated than it would have been to persuade the judge not to transfer in the first instance, but nothing in the record suggests that the District Court did not consider the government's arguments on reconsideration.

Similarly, while the initial transfer order dated May 8, 2001 was devoid of explanation for the decision, and the second order dated May 16, 2001 merely denied the motion to reconsider the transfer order, again without explanation, the District Court did use the vehicle of our Local Rule 3.1 to file an explanatory Memorandum dated June 19, 2001. Once again, the sparseness of the prior orders does not warrant mandamus in light of the subsequent attempt to fill the vacuum. Mandamus is only appropriate when the district court has committed a clear abuse of discretion or clear error of law.

On the other hand, it is the government's complaint that the District Court ordered the case transferred without requiring Streeval to bear the burden of establishing that transfer was appropriate that causes us concern. Although the District Court referred to many of the relevant factors, if in fact the court was unaware that the burden to show reasons for the transfer was on the defendant, then the misconception would be serious enough to warrant mandamus. The burden of proof is often the determinative factor in a discretionary decision, particularly in one where the factors may be closely balanced. It is important that an appellate court performing its review function be satisfied that the District Court recognized where the burden lay. Here, Streeval has not pointed to anything in the record or in the District Court's memorandum that indicates that the

14

District Court placed the burden on Streeval. The government complains, for example, that Streeval has neither identified nor produced documents that allegedly show relevant activities took place in Tennessee; that she has not identified witnesses in Tennessee whereas it has, such as Wentworth, one of the principal victims of the fraud, who is in or near the Eastern District of Pennsylvania; and that she has not produced adequate evidence that it would be physically burdensome for her to be tried in Philadelphia.

We recognize that the District Court may indeed have placed the burden on Streeval and have balanced the factors to reach its decision to transfer the case to the Middle District of Tennessee, but we have no basis to so hold on the record before us. Under the circumstances, we will remand this matter to the District Court for reconsideration, requiring Streeval to bear the burden of showing why transfer is appropriate. We express no opinion as to the merits of a transfer. At argument the government conceded that once the District Court evaluated the factors in light of the appropriate burden, there would be no basis for it to file another mandamus petition.

In light of the scheduled trial date in Tennessee and our desire to be reciprocally accommodating to the District Court in Tennessee, we will direct the District Court on remand to require the parties promptly to present their arguments and supporting data, and to rule no later than the end of the calendar year.[7]

_____

7. At oral argument, Streeval's counsel informed the court that her client was in the hospital and would be unable to attend an evidentiary hearing in Philadelphia. While regrettable, we do not regard this as a basis for delay. It is not necessary that the District Court hold an evidentiary hearing before ruling. Streeval may seek to meet her burden as to the transfer by submission of affidavits attesting to her medical condition and her inability to travel to a criminal trial in Philadelphia.

III.

CONCLUSION

Because we cannot be sure that the District Court followed appropriate procedure before transferring this case to Tennessee, we will issue a writ of mandamus ordering the District Judge to reconsider Streeval's motion to transfer in accordance with the procedure set out in this opinion.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

16