**In re: UNITED STATES of America, Petitioner**

**No. 02–2180.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) on May 1, 2002.

Filed Aug. 23, 2002.

Before NYGAARD, ROTH and BARRY, Circuit Judges.

OPINION

ROTH, Circuit Judge.

Petitioner United States of America asks us to issue a writ of mandamus ordering the Honorable William H. Walls of the United States District Court for the District of New Jersey to vacate an order transferring a criminal prosecution to another district and conduct further proceedings in the case. Because the District Court's transfer did not amount to a clear error of law, however, we will not issue the writ.

For the last four years, the District Court has handled nearly 100 civil and criminal actions involving claims that prin-

cipals of Cendant Corporation—a publicly-held, Fortune 500 company—engaged in securities fraud. This petition arises out of the United States' related securities fraud prosecution of Walter A. Forbes and E. Kirk Shelton, who are two such principals of Cendant.

On March 18, 2002, the District Court granted Shelton and Forbes' pre-trial motion to have the prosecution transferred to the District of Connecticut for the convenience of the parties. *See* Fed.R.Crim.P. 21(b). During a motions hearing, the District Court explained that the decision was based on a consideration of the ten factors articulated in *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964). *See* App. at 03–08. Namely, the District Court considered:

> (1) location of corporate defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer.

376 U.S. at 243–44. In the category of "other special elements," the District Court expressly considered its familiarity with related Cendant securities fraud proceedings gained over the previous four years. *See* App. at 07. With respect to its assessment of each factor, the District Court gave a brief statement of its reasoning and referenced evidence in the record. *See* App. at 03–08.

During the hearing, the District Court correctly noted that Shelton and Forbes—as the moving parties—bore the burden of proving that "all [relevant] things considered, the case would be better off trans-ferred to another district." App. at 03 (quoting *In re: Balsimo* 68 F.3d 185, 187 (7th Cir.1995)). Evidently, the District Court was faithful in its application of this burden, noting expressly that Shelton and Forbes failed to meet the burden with respect to certain of the *Platt* factors. *See, e.g.*, App. at 04.

We have the power to issue the writ that the United States requests pursuant to 28 U.S.C. § 1651(a), and "mandamus is ... the appropriate mechanism for reviewing an allegedly improper transfer order." *Sunbelt Corp. v. Noble, Denton & Assoc.*, 5 F.3d 28, 30 (3d Cir.1993). However, "it is widely accepted that mandamus is extraordinary relief that is rarely invoked." *In re: United States of America*, 273 F.3d 380, 385 (3d Cir.2001). Moreover, "[a] party seeking the writ has the burden of demonstrating that its right to the writ is 'clear and indisputable.'" *Delgrosso v. Spang and Co.*, 903 F.2d 234, 237 (3d Cir.1990). Accordingly, we will issue a writ of mandamus only if, in our discretion, we find that the party seeking the writ has no other adequate means to attain the desired relief and the court below "committed a clear error of law [that approaches] the magnitude of ... a failure to use [judicial] power...." *In re: Sharon Steel Corp.*, 918 F.2d 434, 436 (3d Cir.1990) (quoting *Lusardi v. Lechner*, 855 F.2d 1062, 1069 (3d Cir.1988)) (alterations in original).

The United States asserts that the District Court's balance of the *Platt* factors constitutes such a clear error of law. Specifically, it argues that the District Court did afford sufficient weight to the court's familiarity with related actions, the relative costs the parties and the potential for delay—all of which, the United States contends, militate against the transfer. However, the United States essentially invites us to balance the *Platt* factors *de novo*—an

exercise that *Platt*, itself, admonishes is beyond the scope of our authority. *See Platt*, 376 U.S. at 245 ("Here ... the Court of Appeals undertook a *de novo* examination of the record and itself exercised the discretionary function which the rule commits to the trial judge. This the court should not have done since the writ cannot be used 'to actually control the decision of the trial court.'") (quoting *Bankers Life & Casual Co. v. Holland*, 346 U.S. 379, 383, 74 S.Ct. 145, 98 L.Ed. 106 (1953)). Heeding this warning, we decline the United States' invitation.[1]

Had the District Court made some procedural flaw in rendering the transfer order, we might have had a basis on which to issue the requested writ.[2] However, "[w]e have been reluctant to put specific requirements on the process by which the district courts decide motions to transfer," *In re: United States*, 273 F.3d at 387, and we find no such deficiency in the instant case. The District Court not only identified and considered the factors germane to its decision to transfer the case, but also articulated a sufficient statement of its reasoning.

For the foregoing reasons, the United States' petition for a writ of mandamus is DENIED.

BARRY, Circuit Judge, dissenting sur denial of writ of mandamus.

It is, of course, well-settled that the writ of mandamus is an extraordinary remedy that should rarely be granted. Indeed, we may grant mandamus relief only where a district court "has committed a clear abuse of discretion or clear error of law." *In re: United States of America*, 273 F.3d 380, 389 (3d Cir.2001). "Rarely," however, does not mean "never," *id.* at 385, and the transfer of this major securities fraud prosecution against the former Chairman and Vice–Chairman of the Board of the Cendant Corporation to the District of Connecticut presents precisely the type of extraordinary circumstances for which mandamus was designed. Accordingly, I dissent from the denial of the government's petition.

A district court may transfer a prosecution to another district "[f]or the convenience of parties and witnesses, *and in the interest of justice.*" Fed.R.Crim.P. 21(b) (emphasis added). Here, the interest of justice was cast aside by the District Court; indeed, its opinion does not even mention "interest of justice." Instead, the District Court opted to send a $14 billion, 44 witness stock fraud case to the unsuspecting "District Court of Connecticut" be-

---

1. We share in the dissent's frustration with the ultimate conclusion that the District Court reached. If we were to independently reconsider Shelton and Forbes' transfer motion in light of record before us and the *Platt* factors, we might well reach a different conclusion. To do so, however, would be an *ultra vires* endeavor.

2. For example, we have issued writs of mandamus to vacate different types of transfers where a court has either failed to give a non-movant notice, a hearing or an opportunity to be heard, *see, e.g., Swindell–Dressler Corp. v. Dumbauld*, 308 F.2d 267, 273–74 (3d Cir. 2962)(28 U.S.C. § 1404 transfer); transferred a case to a court that lacked personal jurisdiction over a defendant, *see, e.g., Sunbelt Corp.,*

5 F.3d at 33 (Section 1404 transfer); applied an improper burden of proof, *see, e.g., In re: United States*, 273 F.3d at 389 (Rule 21(b) transfer); failed to consider a necessary factor, *see, e.g., Lony v. E.I. DuPont de Nemours & Co.*, 935 F.2d 604 (3d Cir.1991) *(forum non conveniens* transfer); or transferred a case where there was no evidence to justify doing so, *see, e.g., Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756–57 (3d Cir.1973)(Section 1404 transfer). We have also indicated that we might issue such a writ where a transferring court fails to provide a statement of its reasons for granting a transfer. *See In re: United States*, 273.F.3d at 387 (citing *United States v. Criden*, 648 F.2d 814, 819 (3d Cir.1981)).

cause the two defendants live somewhat closer to one of the three district courthouses in Connecticut —and more on that in a moment—and because much of the alleged criminal misconduct took place in—or was directed from—Connecticut, although it surely was not limited to that state.

A criminal defendant, however, is not entitled to defend his case in his home district, but instead bears the burden of proving that, given all the relevant circumstances, a transfer is in the interest of justice, i.e., all things being equal, a case should stay put. *In re: United States of America*, 273 F.3d at 388. In this regard, it was not enough for the two defendants to show that *they* would be better off in Connecticut and, as will become evident, even that is far from clear. Instead, they had to demonstrate that the *case* would better off in a new locale.

Under this standard, the defendants' showing that New Haven, Connecticut, was slightly closer to their homes than Newark, New Jersey, where the case was to be tried, and that much of the alleged fraud took place in Connecticut was, as a matter of law, woefully deficient for several reasons. First, the parties and the District Court apparently believed that this case would ultimately be transferred to New Haven (or perhaps Bridgeport), which is only slightly closer to the defendants' respective estates in Darien and New Canaan, Connecticut, than to Newark. The District Court's order, however, transferred the case only to the "District of Connecticut," perhaps because the Court belatedly recognized that it is up to the District Court of Connecticut to decide where within that District to send this massive criminal prosecution. Significantly, New Haven has but one active district court judge and Bridgeport only two. In contrast, Hartford, Connecticut, which is

approximately 15 to 20 miles *further* from New Canaan and Darien than Newark, has the remaining five active judges. Accordingly, it seems far more likely that this case will end up even further from defendants' homes than where it started, thereby eviscerating the principal stated reason for the District Court's transfer. The District Court failed to even consider this likelihood.

The only other reason given by the District Court for its extraordinary act of transfer was the large number of fraudulent acts, particularly early-on acts, which occurred in Connecticut. But this is not a case in which it might be helpful for jurors to view a crime scene or where local authorities and local witnesses might be burdened by traveling out of state to testify. This is a white collar crime case where the government's proof will likely be document-driven—a paper case—and where the defendants did not even allege, much less show—and it was their burden—that *any* witness—government or defense— even preferred much less would be inconvenienced by trial in Newark. Accordingly, the fact that more acts took place in Connecticut than in New Jersey is irrelevant. And, of course, bears mention that substantial injury is alleged to have occurred in New Jersey.

And these reasons are all that were claimed—and found—in support of transfer, reasons meager in the extreme even as stated and devastated when examined. Indeed, these reasons cut *against* transfer, not for it. So, too, do a host of other reasons ignored or demeaned by the District Court which together cry out for mandamus relief.

The indictment in this case was returned on February 28, 2001—just over a year and one-half ago—and the District Court has been managing the pretrial proceedings since that time with an eye toward the

long-scheduled trial date of October 1, 2002. It should be noted that in the course of those proceedings, the District Court has taken the guilty pleas three of defendants' alleged co-conspirators whom it will sentence after they testify, pursuant to their cooperating plea agreements, at a trial at which it will not have presided These facts, of course, without more, would not warrant mandamus relief.

But there is more, much more. Trial in Connecticut will most assuredly not commence any time near the October 1 date but, rather, will be significantly delayed. The new judge, after all, will be required to get up to speed on all that has gone before; will any familiarity with the extensive Cendant Corporation litigation—approximately 99 criminal and civil cases—which has been almost exclusively handled by the transferring judge; and will have his or her own docket and trial calendar which, if displaced because of this case, will result in the denial to other litigants of their long awaited day in court.[3] Importantly, delay in the trial of this case will have a ripple effect on yet other cases, give that discovery has been largely stayed in pending Cendant civil actions awaiting the disposition of this prosecution. Even more importantly, this case comes at a time when, in the wake of the Enron-type events to which the public is daily being subjected, public confidence in the integrity of corporate America has been shaken and public interest and governmental interest in timely prosecuting those types of fraud is extraordinarily high. None of this was even mentioned by the District Court.

And given short shrift, if any shrift at all, is the fact, and fact it be, that transfer what the District Court itself described as a "complicated ... significant case"—again, to appease the preferences, unlikely to prevail, of the two defendants to face their charges somewhat closer to home—will cost the taxpayers at least an additional $150,000. Moreover, transfer will disaccommodate the entire government team of attorneys, agents, and support staff by forcing them to leave their families and relocate—or commute—to someplace in Connecticut for the period of this lengthy trial; rent and furnish office space which they otherwise would not have to do; and move their 150 boxes of documents. The District Court gave this the back of its hand, finding only that "there may be a burden on the government's legal staff" but concluding that that burden was outweighed by the two paltry reasons given for the transfer.

Because the "interest of justice" cannot possibly be served by sending this case to Connecticut, the District Court, in my view, committed "a clear abuse of discretion or clear error of law" by doing so. I respectfully dissent.

---

3. The District Court found that the docket conditions in the respective states favored trial in New Jersey, although the difference in conditions was not "significant."