NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos.  11-2574 and 13-1518
_____

W S INTERNATIONAL, LLC

v.

M. SIMON ZOOK, CO, d/b/a The Zook Molasses Company;
GOOD FOOD, INC; L&S SWEETENERS,
Appellants
_____

On Appeal from the District Court
for the Eastern District of Pennsylvania
D.C. Civil No. 5-11-cv-03014
(Honorable Lawrence F. Stengel)
_____

Argued: November 12, 2013

Before: HARDIMAN, SCIRICA, and NYGAARD, *Circuit Judges*

(Filed: May 09, 2014)

Gene M. Linkmeyer, Esq. [ARGUED]
Alan M. Rosen, Esq.
Neal A. Jacobs, Esq.
Jacobs Law Group
2005 Market Street
One Commerce Square
Suite 1120
Philadelphia, PA  19103

   *Counsel for Appellants*

Christopher M. Brubaker, Esq. [ARGUED]
Joseph M. Donley, Esq.

Joseph M. Donley, Esq.
Jonathan W. Hugg, Esq.
Clark Hill Thorp Reed
2005 Market Street
One Commerce Square
Suite 1000
Philadelphia, PA  19103

　　　*Counsel for Appellee*

_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Appellants M. Simon Zook Co., doing business as Zook Molasses Co., and Good Food Inc., doing business as L&S Sweeteners (together, "Zook"), and Appellee W.S. International, LLC ("W.S.I.") entered into a business relationship wherein Zook produced W.S.I.'s fondant[1] line using equipment supplied by W.S.I.  After their relationship soured, W.S.I. filed suit in the United States District Court for the Eastern District of Pennsylvania, claiming conversion of the equipment and seeking injunctive relief.  The District Court entered a temporary restraining order, which allowed W.S.I. to retrieve its equipment.  At a later stage of the case and upon W.S.I.'s motion, the District Court transferred the action to the United States District Court for the Northern District of Illinois.  Zook now challenges both the entry of injunctive relief and the transfer of venue.  We will affirm in part and dismiss in part for lack of jurisdiction.

**I.**

_____

[1] Fondant is a "creamy plastic mass of cooked or uncooked sugar used as a basis for candies or icings."  Webster's Third New International Dictionary 883 (1964).

2

W.S.I. distributes fondant and other food products in the bakery industry. In 2009, W.S.I. entered into an arrangement with Zook, a food products manufacturer, whereby W.S.I. agreed to purchase its sugar from Zook, and Zook agreed to produce W.S.I.'s fondant line at its facility in Leola, Pennsylvania. In June 2009, W.S.I. purchased a fondant wheel for Zook's fondant production and had the wheel installed at Zook's facility. For various reasons, including repairs to the fondant wheel and Zook's production of allegedly substandard fondant, Zook failed to produce sufficient fondant to meet W.S.I.'s needs.

As a result, W.S.I. entered into an alternative arrangement for fondant production with the food manufacturer Royal Sugar Company, located in Swedesboro, New Jersey. In April 2011, W.S.I. sought permission to enter Zook's facility and retrieve its fondant wheel, which it intended to transfer to Royal Sugar Company's facility. Zook refused to permit access to the fondant wheel until W.S.I. paid $650,000 in outstanding invoices. Zook also claimed liens on the wheel. Zook later acknowledged to the District Court that during this period the wheel served no use to Zook and sat dormant in its facility.

On May 6, 2011, W.S.I. filed suit against Zook in the Eastern District of Pennsylvania, claiming conversion of the fondant wheel and seeking injunctive and declaratory relief. On the same day the complaint was filed, W.S.I. moved for a temporary restraining order. The District Court held a hearing on the motion for temporary restraining order on May 9, 2011, and Zook filed a response in opposition the next day. On May 12, 2011, the District Court granted injunctive relief, which reads as follows:

3

(2) The defendants are enjoined and restrained, directly or indirectly, and whether alone or in concert with others, until further Order of this court from preventing the plaintiff from accessing, removing, and taking possession of its property located at the defendants' Leola facility.

(3) This Order shall remain in full force and effect until such time as this court specifically orders otherwise.

J.A. 114. There was no further extension of the order. Zook filed a notice of appeal on June 9, 2011.

After W.S.I. retrieved its fondant wheel, the case proceeded in District Court, with W.S.I. amending its complaint to raise breach of contract claims relating to an alleged confidentiality agreement between the parties. Zook filed an answer to W.S.I.'s amended complaint, specifically denying the parties had a confidentiality agreement. Then on April 2, 2012, W.S.I. sought leave to file a second amended complaint and attached what it contended was the parties' confidentiality agreement signed by Zook. On the same day, W.S.I. filed a motion to transfer the case to the Northern District of Illinois, based on the confidentiality agreement's forum selection clause directing any claims be filed in Illinois. Zook objected to the motion to transfer, continuing to contend that no confidentiality agreement had ever been formed, but did not object to W.S.I.'s filing a second amended complaint. On January 29, 2013, the District Court permitted the second amended complaint to be filed and granted W.S.I.'s motion to transfer venue based on the forum selection clause. Zook filed a notice of appeal on February 22, 2013.[2]

---

[2] The appeal of the temporary restraining order was docketed as case number 11-2574. The appeal of the transfer order was docketed as case number 13-1518. In an Order of this Court dated April 26, 2013, we consolidated the two appeals.

4

## II.

Before we review the merits, we must determine whether we have jurisdiction.[3] We hold we have jurisdiction to review the grant of injunctive relief as an interlocutory order, but we do not have jurisdiction to review the transfer order.

In general, a temporary restraining order is not immediately appealable, while an order granting a preliminary injunction may be appealed as an interlocutory order under 28 U.S.C. § 1292(a)(1). *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1150, 1153 (3d Cir. 1982). Yet when an order labeled a temporary restraining order operates as a preliminary injunction, we have exercised appellate jurisdiction. *See, e.g.*, *Miller v. Mitchell*, 598 F.3d 139, 145 (3d Cir. 2010) (reviewing a temporary restraining order as a preliminary injunction because it was of indefinite duration and entered after notice to the defendant and an adversarial hearing); *Arthur Treacher's*, 689 F.2d at 1155 n.7 (noting we "look beyond terminology to the actual content, purport, and effect" of an order to determine whether it is appealable). In this case, the District Court entered the injunctive relief for an indefinite period of time and after an adversarial hearing. Accordingly, because the order is in effect a preliminary injunction and appealable under 28 U.S.C. § 1292(a)(1), we have jurisdiction to review it.

But we do not have jurisdiction to review the order transferring venue. "[O]ur general rule . . . that orders transferring venue are not immediately appealable" is well established. *See Carteret Sav. Bank, FA v. Shushan*, 919 F.2d 225, 228 (3d Cir. 1990)

---

[3] The District Court had diversity jurisdiction under 28 U.S.C. § 1332.

5

(citing *Nascone v. Spudnuts, Inc.*, 735 F.2d 763, 764 (3d Cir. 1984), and *McCreary Tire & Rubber Co. v. CEAT S.p.A.*, 501 F.2d 1032, 1034 (3d Cir. 1974)). While limited review of a transfer order is available by way of mandamus review, *see Sunbelt Corp. v. Noble, Denton & Assocs.*, 5 F.3d 28, 30 (3d Cir. 1993), Zook filed a notice of appeal— not a petition for writ of mandamus. We may construe a notice of appeal as a petition for writ of mandamus, but that decision is discretionary. *Spudnuts*, 735 F.2d at 773. Under the circumstances of this case, we find no compelling reason to stray from our general rule.

Nor do we believe that jurisdiction lies because the parties agree Zook's notice of appeal should be treated as a petition for writ of mandamus and their cooperation should be rewarded. We should not find jurisdiction simply because the parties agree we should. Because an appeal does not lie from an order transferring venue, a petition for mandamus is the only means by which a party can obtain interlocutory review in the transferor circuit. Mandamus is "extraordinary relief that is rarely invoked." *In re Federal-Mogul Global Inc.*, 300 F.3d 368, 378 (3d Cir. 2002) (quoting *In re United States*, 273 F.3d 380, 385 (3d Cir. 2001)); *see also id.* at 384 (reviewing a denial of a motion to transfer and finding the "rigorous standard" for the writ's issuance not met); *In re United States*, 273 F.3d at 389-90 (ordering a district court to reconsider a transfer motion where it was not clear from the record the court followed proper procedure before transferring the case). We find this case does not warrant consideration of the writ. Accordingly, we lack jurisdiction to review the order transferring venue to the Northern District of Illinois.

**III.**

6

Zook challenges the entry of injunctive relief on three grounds: (1) W.S.I. was unlikely to succeed on its conversion claim because Zook held a common law repairman's lien on the fondant wheel, (2) W.S.I. failed to show irreparable harm, and (3) the District Court erred by failing to require a bond under Fed. R. Civ. P. 65(c). We employ a "tripartite standard of review" for preliminary injunctions. *K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 105 (3d Cir. 2013). The District Court's findings of fact are reviewed for clear error, its legal conclusions are assessed *de novo*, and its ultimate decision to grant or deny an injunction is reviewed for abuse of discretion. *Id.* (quoting *Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243, 252 (3d Cir. 2002)). Under this standard of review, we will uphold the entry of injunctive relief.

The District Court determined W.S.I.'s conversion claim was likely to succeed on the merits. Applying the elements of conversion, the court found W.S.I. had a property right in the fondant wheel, Zook was interfering with that right, and Zook had no legal justification for interfering. The court made extensive findings regarding the last element, determining Zook lacked the necessary factual predicate to assert a repairman's lien on the fondant wheel. Specifically, the court found that Zook had no ownership right or interest in the wheel upon its delivery, and put the wheel to no use after fondant production for W.S.I. came to a halt. Though repairs were made to the fondant wheel, the District Court found the business relationship between Zook and W.S.I. was not that of a repairman and customer. As a result, the court held no lien attached and W.S.I. was likely to prevail on its conversion claim.

7

These factual findings were not clearly erroneous and the legal conclusion drawn from them is correct. As articulated by the Supreme Court of Pennsylvania, a repairman's lien attaches where "a workman or artisan by his labor or skill increases the value of personal property *placed in his possession to be improved*." *Assocs. Fin. Servs. Co. v. O'Dell*, 417 A.2d 604, 606 (Pa. 1980) (emphasis added) (quoting *Meyers v. Bratespiece*, 34 A. 551, 551 (Pa. 1896)); *see also* Restatement (First) of Sec.: Persons Entitled to Specific Possessory Liens § 61 (1941, updated 2013) (providing illustrations of a repairman's lien, all of which involve a bailor delivering chattel to a bailee for the purpose of making repairs). A repairman's lien is "fundamentally consensual" in nature, because it arises from an express or implied agreement between the owner of the chattel and the person making repairs. *O'Dell*, 417 A.2d at 606.

On the facts found by the District Court, we agree a repairman's lien likely did not attach. The court found the fondant wheel was placed in Zook's possession not "to be improved," *id.*, but to produce fondant. Moreover, the record before the District Court contained no evidence suggesting W.S.I. and Zook had agreed, or even implied, that the cost of repairs would be allocated to W.S.I.[4] On this record, we cannot discern an agreement, "fundamentally consensual" in nature, by which W.S.I. was obliged to pay for Zook's repairs. *Id.* Accordingly, the District Court properly determined W.S.I.'s conversion claim would likely succeed on the merits.

Zook's challenge to the finding of irreparable harm also fails. The District Court found W.S.I. had no other facility where it could manufacture fondant and could not

---

[4] For example, Zook can point to no requests from W.S.I. for repairs or invoices for repair costs.

afford to purchase another fondant wheel.  Because W.S.I. would be unable to produce fondant without injunctive relief, W.S.I.'s fondant business was likely in serious jeopardy.  We have recognized this sort of harm as irreparable.  *See Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 802 (3d Cir. 1989) (noting potential irreparable injury where a party may be forced to shut down without the requested injunctive relief); *Frank's GMC Truck Ctr. v. Gen. Motors Corp.*, 847 F.2d 100, 102 n.4 (3d Cir. 1988) (finding no irreparable harm to a company where the company's loss of a market segment "does not place its continued business survival in serious jeopardy").  Accordingly, the District Court correctly found Zook stood to suffer irreparable harm without the requested injunctive relief.

Finally, the District Court's decision not to issue a bond was justified.  Fed. R. Civ. P. 65(c) permits a court to issue a preliminary injunction only if it requires the movant to post security "in an amount . . . proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined."  But a narrow exception to this bond requirement exists when compliance with the injunction "raises no risk of monetary loss to the defendant."  *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 426 (3d Cir. 2010) (quoting *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 210 (3d Cir. 1990)).  The court found Zook would not suffer harm if W.S.I. retrieved its fondant wheel, because Zook likely had no right to retain the wheel, which was sitting dormant in Zook's facility.  This conclusion is set forth in a section of the District Court's opinion unrelated to Rule 65, and we usually require a court to make "specific findings" concerning the bond requirement.  *Id.* (quoting *Elliott v. Kiesewetter*, 98 F.3d 47, 60 (3d Cir. 1996)).

9

Nonetheless, we agree with the District Court that no bond was required in this circumstance.

## IV.

For the foregoing reasons, we will affirm in part and dismiss in part for lack of jurisdiction.

HARDIMAN, *Circuit Judge*, dissenting in part,

I agree with my colleagues that the District Court did not err when it granted injunctive relief to Appellee W.S. International, LLC (WSI) in Case No. 11-2574. I disagree, however, that we lack jurisdiction over the District Court's order transferring the case to the United States District Court for the Northern District of Illinois in Case No. 13-1518. Accordingly, I respectfully dissent in that case.

I

The majority acknowledges that we may exercise mandamus jurisdiction over the District Court's transfer order. Nevertheless, after faulting Zook for not filing a petition for writ of mandamus, my colleagues summarily conclude: "[u]nder the circumstances of this case, we find no compelling reason to stray from our general rule [that orders transferring venue are not immediately appealable]." Maj. Typescript at 6. On that thin reed, the Court declines to exercise jurisdiction over Zook's appeal in Case No. 13-1518.

A brief review of the procedural history of these consolidated appeals demonstrates why Zook's failure to file a petition for writ of mandamus was perfectly appropriate. On April 26, 2013, the Clerk of this Court issued an order that invited Zook and WSI to "consider whether the notice of appeal should be treated as a petition for a writ of mandamus" and to discuss the merits of that petition. JA at 417–18. The parties responded to the Clerk's inquiry by letter dated May 31, 2013, in which they *jointly* asked us to construe Zook's notice of appeal as a petition for writ of mandamus. They did so in an effort to "reduce the paperwork burden and confusion . . . imposed by a separate

filing for a writ, the subsequent motion to consolidate with this appeal, and the potential for overlapping briefing." JA at 419. Thus, while the parties have always disagreed about the *merits* of mandamus relief, they never disputed our *jurisdiction* to review the propriety of the District Court's transfer order. Indeed, both Zook and WSI referenced in their appellate briefs the agreement they had struck to have the notice of appeal treated as a petition for writ of mandamus. *See* Zook Br. at 6 n.1 (noting that "[t]he parties agree this Court should consider the notice of appeal as a petition for writ of mandamus"); WSI Br. at 1 & n.2 ("The [transfer order] is properly before this court on a petition for writ of mandamus" and "Zook initiated the appeal by filing a notice of appeal which the parties agreed should be treated as a petition for writ of mandamus."). I would reward, not punish, this salutary cooperation between counsel. Of course, this does not mean, as my colleagues suggest, that we should "find jurisdiction simply because the parties agree we should." Maj. Typescript at 6. Rather, I believe it an abuse of discretion for this Court, in derogation of the express agreement reached by the parties at our suggestion, to fail to construe Zook's notice of appeal as a petition for writ of mandamus.

II

The fact that we have mandamus jurisdiction is, of course, a far cry from deciding that such extraordinary relief should be granted. Although mandamus is "the appropriate mechanism for reviewing an allegedly improper transfer order," *Sunbelt Corp. v. Noble, Denton & Assocs.*, 5 F.3d 28, 30 (3d Cir. 1993), the party seeking the writ must demonstrate clear legal error that "approach[es] the magnitude of an unauthorized

2

exercise of judicial power." *Carteret Sav. Bank, F.A. v. Shushan*, 919 F.2d 225, 232–33 (3d Cir. 1990). To satisfy this heavy burden, the petitioner must show that it has no other adequate means of obtaining the relief sought, and it has a "clear and indisputable" right to the writ. *Cheney v. United States District Court*, 542 U.S. 367, 380–81 (2004) (internal quotation marks and citation omitted). The issuing court then must be satisfied that the writ is appropriate under the circumstances. *See id.* Zook has satisfied these criteria.

The first factor is easily satisfied because the very nature of the transfer order deprives Zook of the ability to otherwise obtain the relief it seeks. In *Carteret*, we held that the possibility of an appeal in the transferee forum following a final judgment there is not an adequate alternative for relief. 919 F.2d at 233; *see also Sunbelt*, 5 F.3d at 30. A holding to the contrary would "lead to a conclusion that mandamus is never available in the transferor circuit as an appeal will be possible at the conclusion of the proceedings in the transferee district court." *Carteret*, 919 F.2d at 233 n.15. Because we will lose jurisdiction over the case once it is transferred, there is no other adequate means to avoid the transfer besides a writ of mandamus. *See id.* at 233. Accordingly, I turn to the second factor, *viz.*, whether Zook has a "clear and indisputable" right to the writ.

The District Court's decision to transfer the case to the Northern District of Illinois rests entirely on a purported confidentiality agreement between the parties (Form 3). This document included a forum-selection clause, which provided that all disputes would be litigated in Illinois courts. In its motion for leave to file a second amended complaint, WSI had attached a copy of Form 3 as an exhibit and incorporated the venue provision

into the pleadings. The District Court noted that the agreement was "of dubious existence." JA at 412. Nonetheless, despite Zook's repeated protestations that no confidentiality agreement existed, the District Court accepted Form 3 as a binding contract between the parties. This conclusion was particularly strange in light of the fact that when the Court suggested there was no confidentiality agreement, counsel for WSI responded, "correct." JA at 338. Instead of analyzing whether Form 3 was a valid contract, the District Court relied on a procedural point, *viz.*, that Zook had not objected to WSI's motion to file an amended complaint. To the District Court, this meant that Zook had acceded to the content of the complaint and "the parties have reached accord that [Form 3] represents their Confidentiality Agreement." JA at 412. The District Court repeated this reasoning in denying Zook's motion for reconsideration. This was clear legal error, as the record demonstrates that Zook never agreed to any of the terms of Form 3, including its forum-selection clause.

It is hornbook law that a valid contract requires offer, acceptance, and consideration. *Jenkins v. Cnty. of Schuylkill*, 658 A.2d 380, 383 (Pa. 1995). Acceptance of an offer must be unconditional; if the offeree alters the terms of the offer, it has made a counter-offer, and a contract is not formed. *First Home Sav. Bank, FSB v. Nernberg*, 648 A.2d 9, 15 (Pa. Super. Ct. 1994). Here, while the parties contemplated a formal written confidentiality agreement, they engaged in a "battle of the forms" that was never resolved. After WSI proposed Form 2, a draft version of the confidentiality agreement, Zook responded with Form 3, which included material changes to Form 2. Form 3 thus

constituted a counter-offer by Zook. WSI declined to accept Zook's Form 3 by submitting Form 4, another proposed agreement, almost two years later. This too was a counter-offer, which Zook never accepted. Thus, at no point did the parties enter into a valid contract that contained the forum-selection clause, and it was plain error for the District Court to hold otherwise.

The District Court appeared to apprehend the basic analysis I have outlined when it noted that Form 3 was a "Confidentiality Agreement of dubious existence." JA at 412. Nevertheless, the District Court did an end run around the contract formation analysis, instead construing Zook's failure to object to WSI's motion for leave to file a second amended complaint as an admission that the complaint's contents were true. This inference wrongly conflated Zook's acquiescence as to WSI's ability to file the complaint with its agreement as to the substance of that pleading. This was a fundamental error: Zook not only was under no obligation to oppose WSI's Rule 15 request, but also had no meritorious grounds to do so. Indeed, if it had objected, it could have been subject to Rule 11 sanctions.[1] Rather, the opportunity to either admit or deny allegations in the amended complaint would have been ripe only *after* that document had been filed. *See*

---

[1] Under Rule 15, a defendant could object to a motion for leave to amend based on "undue delay, bad faith, dilatory motive, prejudice, and futility." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). "Prejudice under Rule 15 means undue difficulty in prosecuting [or defending] a lawsuit as a result of a change of tactics or theories on the part of the party." *Lundy v. Adamar of New Jersey, Inc.*, 34 F.3d 1173, 1189 n.8 (3d Cir. 1994) (citing *Deakyne v. Comm'rs of Lewes*, 416 F.2d 290, 300 n.19 (3d Cir. 1969)) (alterations in original omitted).

When WSI filed its motion, discovery was ongoing. An amendment would not cause undue delay or be prejudicial, as trial was not yet imminent and a part of the action (the TRO) was on appeal to the Third Circuit. Thus, Zook had no basis to object to the amendment request.

Fed. R. Civ. P. 12(a), (b), (h) (providing that the defendant answers to pleadings *after* being served with the complaint).

WSI tacitly admits that the District Court erred in this regard, but counters that any error committed by the District Court in ordering the transfer does not rise to the "clear error" required for issuing a writ. Instead, it asserts that "the District Court already considered and rejected Zook's arguments for clear error in ruling on Zook's motion for reconsideration under Fed. R. Civ. P. 59(e) and 60(b)." WSI Br. at 22 (referring to SA 58–63 (order and memorandum opinion denying motion for reconsideration)). But the District Court's denial of Zook's motion for reconsideration rested on the very same mistaken premise as its initial order transferring venue. The fact that the District Court committed the same error not once but twice in no way insulates it from a finding by this Court that it committed a "clear error of law" that should be remedied.[2]

When the aforementioned reasons are considered in light of the fact that WSI initially chose to file in the Eastern District of Pennsylvania, I am satisfied that a writ of mandamus is appropriate under these circumstances. WSI averred that venue was proper

---

[2] WSI further contends that the District Court had authority for its order under 28 U.S.C. § 1404(a), which permits transfer to any venue where the action might have been brought. The District Court's decision relied not on § 1404(a), but on the non-existent confidentiality agreement. And although Zook's argument that we should not consider this point defies our repeated statement that "[a]n appellate court may affirm a result reached by the district court on different reasons, as long as the record supports the judgment," *Guthrie v. Lady Jane Collieries, Inc.*, 722 F.2d 1141, 1145 n.1 (3d Cir. 1983) (citing *Helvering v. Gowran*, 302 U.S. 238, 245 (1937)), Zook argues persuasively that the Eastern District of Pennsylvania is a more convenient venue because of the location of the witnesses, documents, and the fondant wheel that gave rise to the parties' dispute.

in the Eastern District of Pennsylvania on three separate occasions. Only after the District Court denied its emergency motion for a preliminary injunction did WSI seek to transfer the case, and its basis for the motion to transfer had nothing to do with changed circumstances relating to witnesses, documents, the fondant wheel, *et cetera*. Rather, its sole ground for the transfer was the forum-selection clause in Form 3 which, for the reasons I have explained, was not part of an enforceable contract. Because I would not honor WSI's transparent attempt to forum-shop, I respectfully dissent in Case No. 13-1518.